IN THE MATTER OF THE GENERAL ELECTION HELD NOVEMBER 7, 1961 FOR THE OFFICE OF TOWNSHIP COMMITTEEMAN IN BETHLEHEM TOWNSHIP, HUNTERDON COUNTY, N. J.

IN THE MATTER OF THE GENERAL ELECTION HELD NOVEMBER 7, 1961 FOR THE OFFICE OF TOWNSHIP COMMITTEEMAN IN KINGWOOD TOWNSHIP, HUNTERDON COUNTY, N. J.

Superior Court of New Jersey
Appellate Division

Argued May 21, 1962—Decided May 28, 1962.

450

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. A. Warren Herrigel* argued the cause for appellant Charles R. Meyers (Bethlehem Township) (*Messrs. Herrigel & Herrigel,* attorneys).

*Mr. John Dale Seip* argued the cause for appellant George Plazneck (Kingwood Township).

*Mr. Harry A. Walsh* argued the cause for respondents William H. Kinney (Bethlehem Township) and John Raffo (Kingwood Township) (*Mr. Emmett D. Topkins,* attorney).

*Mr. Edwin K. Large, Jr.,* County Counsel, argued the cause for intervenor Hunterdon County Election Board.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. This is an appeal from two orders of the Hunterdon County Court invalidating certain civilian absentee ballots cast for the office of township committeeman in Bethlehem and Kingwood Townships, respectively, at the November 1961 general election, and invalidating the certificates of election theretofore issued to the two appellants, Meyers and Polazneck, who won a plurality of the votes in those townships when the absentee ballots were added to those cast at the polls.

## I.

Respondent Kinney, the Democratic incumbent, and appellant Meyers, Republican, were candidates at the general election for the three-year term of township committeeman for Bethlehem Township, Hunterdon County. Included in the total votes cast were two military absentee ballots and 16 civilian absentee ballots. Kinney received a majority of the votes cast at the polling place, but all 16 of the civilian absentee ballots were cast for Meyers. These latter were sufficient to give Meyers a majority of 11 votes. Kinney made timely application to the Hunterdon County Court for a recount under the provisions of *N. J. S. A.* 19:28–1 *et seq.* A recount was ordered, and on November 27, 1961 the four members of the Hunterdon County Election Board met to recount the ballots in the presence of the candidates and their attorneys. The result of the ballots cast at the polling place remained substantially unchanged. Kinney had no objection to the military absentee ballots, but did object to the inclusion of 13 of the 16 civilian absentee ballots. Eight were challenged because the blank spaces in the following, which appeared on the left-hand side of the absentee certificate (*N. J. S. A.* 19:57–17), had not been filled in:

"I, ................................ do solemnly swear that I am a registered voter of the State of New Jersey, and that I have

resided in the county of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
continuously since . . . . . . . . . . . . . . . . . . . . . . . . . .
(month, date and year)
 My address in said county is . . . . . . . . . . . . . . . . . . . . . . . . . . .
(street and number, if any,
. . . . . . . . . . . . . . . . . where I have resided since . . . . . . . . . . . . . . . .
 or rural route) . . . . . . . . . . . . . . . . . . . . . . (month, date and year)
 I will be a resident of the State of New Jersey at the above
address on . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ''
(date of election)

However, the voter's name and reason for absence, as well as the completed notary's certificate, were all affixed. One absentee ballot was challenged because the doctor's certificate stated merely that the voter, a woman, was confined to her home because of arthritis, but failed to state that she would be unable to vote at the polling place on the date of the election, as required by *N. J. S. A.* 19:57–18. Four certificates were challenged because of some defect in the notary's certificate: one because the notary's title was not designated; another because there was no county clerk's certificate showing that the notary had the power to take oaths or affidavits in Texas; a third because of the absence of such certificate as well as the date when the notary's commission expired; and the fourth because the New York notary had failed to affix her seal, no county clerk's certificate was attached, and no notation made of the expiration date of her commission.

The county election board being evenly divided on upholding Kinney's objections, the matter was submitted to the county judge. Before him in one pile were the 16 certificates which had been detached from the absentee ballots (the inner envelopes) and in another pile the absentee ballots themselves. There was, of course, no way for the judge to identify which certificate had accompanied a particular absentee ballot. After the court had reserved decision on the objections, Meyers on December 1, 1961 requested permission to offer proof that the persons who administered the oaths to the absentee civilian voters were in fact notaries

public. Pursuant to leave granted, Meyers soon after submitted a county clerk's certificate for each of the notaries involved, as well as a supplemental statement from the doctor, thereby supplying the deficiencies in the last five of the challenged civilian absentee ballots.

The County Court not having announced its decision, and a certificate of election having previously been issued to Meyers, he took office on January 1, 1962. On January 12 the county judge rendered an oral opinion which ignored the objections Kinney had raised as to deficiencies in the certificates accompanying the absentee ballots and held that the ballots should not have been counted. In his view, they had become marked ballots because they had not been legally processed and counted by the county board of elections in accordance with *N. J. S. A.* 19:57–24 and 31. The absentee ballots had not been opened and counted until election day, in contravention of *N. J. S. A.* 19:57–24, which requires that:

"The county board of elections shall, promptly after receiving each civilian absentee ballot, remove the inner envelope, containing the ballot, from the outer envelope and shall compare the signature and the information contained on the flap of the inner envelope with the signature and information contained in the respective requests for civilian absentee ballots. * * *

* * * * * * * *

After such investigation the county board of elections shall detach or separate the certificate from the inner envelope containing the military service or civilian absentee ballot, unless it has been rejected by it or by the County Court, marking the envelope so as to identify the election district in which the ballot contained therein is to be voted as indicated by the absentee voter's home address appearing on the certificate attached to or accompanying said inner envelope * * *."

The county judge also called attention to *N. J. S. A.* 19:57–31, which provides:

"On the day of each election each county board of elections shall open * * * the inner envelopes in which the absentee ballots, returned to it, to be voted in such election, are contained, except

those containing the ballots which the board or the County Court of the county has rejected, and shall remove from said inner envelopes the absentee ballots and shall then proceed to count and canvass the votes cast on such absentee ballots, * * *."

The judge concluded, "I do not see how we can get away from the fact that the way in which these ballots or the whole envelope and ballot were opened that they became marked ballots, in my opinion, and should not have been counted." The judge was apparently of the impression that both the outer and inner envelopes had been opened on election day, the inner envelope having the certificate attached at the time it was opened.

The parties appeared before the County Court on January 19, 1962 because they had been unable to agree on the form of the order. The court then framed and entered the order from which Meyers appeals. Although it invalidated his certificate of election, it did not direct that a certificate be issued to Kinney, with the result that a vacancy has continued on the Bethlehem Township Committee. During the proceedings on that day Meyers applied for, and received, leave to submit evidence as to the procedure followed by the county election board, since the record was barren of any facts relating to the point upon which the county judge had based his opinion.

The County Court received further evidence on February 2, 1962, at which time the clerk and the chairman of the county board of elections testified. Their testimony was to the effect that as ballots were received through the mail at the county seat prior to election day, the clerk of the board opened the outer envelope and compared the signature on the large flap certificate attached to the inner envelope with the county clerk's list of voters to whom absentee ballots had been sent. The clerk verified whether the respective absentee voters were properly registered, and then set to one side the sealed inner envelopes containing the ballots, with the flap certificates still attached. The county board, it was testified, had then met on election day and

examined each flap certificate, passing on each one unanimously. All the certificates found valid were then detached from their sealed inner envelopes, and these envelopes placed in one pile. After all the absentee ballots for the entire county had thus been examined, and all the flaps detached and set aside, the then unidentifiable sealed inner envelopes were opened and the ballots tallied.

The court took no further action after having received this evidence, thus leaving standing the January 19, 1962 order.

Turning to the Kingwood Township committeeman election, appellant Polazneck and respondent Raffo were the Republican and Democratic candidates, respectively, for that office at the November 1961 general election. After all the votes, including the absentee ballots, had been counted, Polazneck was certified the winner by three votes. As in the Bethlehem Township election, there was a recount, as a result of which Raffo received an additional vote, but Polazneck was still the winner by two votes. Six civilian absentee ballots had been cast in the Kingwood Township election, but one absentee had voted for neither Polazneck or Raffo.

In the course of the recount Raffo objected to three of the civilian absentee ballots. In the case of two, the objection was that the voters, husband and wife, had failed to fill in the blanks in the following, which appeared on the left-hand side of the certificate, as noted above:

"I, ................................, do solemnly swear that I am a registered voter of the State of New Jersey, and that I have resided in the county of .....................................
continuously since ... ........ ...............................
My address in said county is *R. D. No. 2, Stockton, New Jersey,* where I have resided since *1952.*" (The italicized material filled the blanks which appear at these places in the form.)

The objection to the third certificate was that the doctor's certificate stated:

"October 26, 1961
To whom it may concern: Philip Schaub, R. D., Stockton, is under my medical care. His condition is such that he is unable to physically cast his ballot at the polling place.
(signed) Leonard Rosenfeld"

Here, as in the case of the Bethlehem Township ballot, the claim was that the certificate should have stated that the voter would be unable to cast his ballot at the polling place on the date of the election.

The county election board held the three absentee ballots valid. Raffo, who would have been the successful candidate had the three ballots been rejected, appealed to the County Court. Polazneck's attorney called the attention of the court to the fact that what was involved was a recount under *N. J. S. A.* 19:28–1. This being the case, the county election board and the County Court were limited to counting the votes cast and determining the validity of each ballot solely on the face of the ballot. Any person desiring to contest the election by having a ballot declared illegal was obliged to proceed in the Superior Court under *N. J. S. A.* 19:29–1 *et seq.* The correct way for Raffo to have proceeded after being unsuccessful on the recount was, counsel argued, to file a petition in the Superior Court for a hearing on the merits as to the validity of absentee ballots challenged because of technical irregularities in the certificates. Polazneck's attorney said that even conceding the County Court had jurisdiction, the three challenged certificates were nonetheless valid under *In re Moore*, 57 *N. J. Super.* 244 (*App. Div.* 1959), and the cases there cited.

The County Court then raised the question as to the inner envelopes having been opened and counted on election day, noting the requirements of *N. J. S. A.* 19:57–24. He was of the opinion that the three civilian absentee ballots were invalid. Subsequently, on January 19, 1962, he signed the order here under appeal declaring these ballots void and invalidating the certificate of election previously issued to Polazneck. Despite the testimony taken on January 19,

1962 in the Bethlehem Township case, the court took no further action and permitted the order to stand. The vacancy on the township committee has continued in the meantime.

## II.

Bethlehem and Kingwood Townships came before the County Court on a demand for a recount under *N. J. S. A.* 19:28–1, which provides that any candidate having reason to believe that an error had been made in counting the vote or declaring the result of an election, may within the time fixed by that statute apply to the judge of the Superior Court assigned to the county, or to the County Court Judge, for a recount of the votes cast.

*N. J. S. A.* 19:57–24, dealing with the duties of county boards of election after receiving absentee ballots, directs that

"Disputes as to the *qualifications* of military service or civilian absentee voters to vote *or* as to *whether or not or how any such* military or civilian absentee *ballot shall be counted* in such election shall be referred to the County Court of the county for determination." (Italics ours)

The power of the County Court to hear and determine disputes as to whether or not an absentee ballot shall be counted, or how such ballot shall be counted, can be discharged only after the ballots have been removed from the inner envelopes. Of necessity, this can take place only after the certificates attached to the inner envelopes and identifying the particular voters have been removed.

Accordingly, it must be to a rejection under the power of the County Court to hear and determine disputes as to the *qualifications* of absentee voters that the statutes, *N. J. S. A.* 19:57–24 and 19:57–31 (mentioned by the County Court) refer, when they state:

"After such investigation the county board of elections shall detach or separate the certificate from the inner envelope containing the

* * * absentee ballot, unless it *has been rejected* by it or by the County Court, * * *" (*N. J. S. A.* 19:57–24)

"On the day of each election each county board of elections shall open * * * the inner envelopes in which the absentee ballots, returned to it, to be voted in such election, are contained, except those containing the ballots which the board or the County Court *has rejected,* * * *" (*N. J. S. A.* 19:57–31)

The emphasis we have added in these quotations calls attention to the past tense of the statutory language.

██ Once the ballots have been removed from the inner envelopes, the board is directed to "count and canvass the votes cast." *N. J. S. A.* 19:57–31. It is only during this process that disputes "as to whether or not or how any such * * * absentee ballot shall be counted" can arise. The County Court's function of resolving disputes as to the *qualifications* of absentee voters is over and past as of the time the certificates are removed.

██ Had the County Court in this case attempted to pass upon the qualifications of any absentee voter, it would have been without jurisdiction, because the time when a "dispute" might legitimately have arisen, had passed. The court could not, in any event, have gone into the question of qualifications in the process of conducting a recount under *N. J. S. A.* 19:28–1 *et seq.* However, a defeated candidate would not be without remedy. Under *N. J. S. A.* 19:29–1(e) the election of any person to any public office may be contested by voters "when illegal votes have been received, or legal votes rejected at the polls sufficient to change the result." Such a proceeding is brought by petition before a judge of the Superior Court assigned to the county where the office is contested, *N. J. S. A.* 19:29–2, and a judgment for petitioners has the effect of setting aside the challenged election, *N. J. S. A.* 19:29–9.

 The County Court is without jurisdiction to hear a case arising under *N. J. S. A.* 19:29–1 *et seq. In re Mayor, etc., South River,* 27 *N. J. Super.* 109 (*Law Div.* 1953). Under an application for a recount pursuant to *N. J. S. A.* 19:28–1 *et seq.,* a candidate is entitled to question

an error "in counting the vote, or declaring the vote of any election," and not to question the procedures employed by the county board in reviewing the certificates, or to question the qualifications of individual absentee voters.

Since the County Court judge was here sitting as a legislative agent under a *chapter* 28 proceeding, to determine whether the count of votes was correct, he could decide that any *ballot* was defective. It would have been improper for him to consider anything in relation to the *certificate* that had been attached to the inner envelope of an absentee ballot. Once the certificates had been detached from the inner envelopes, and the votes counted, exclusive jurisdiction of any dispute relating to the qualifications of an absentee voter or any certificate was vested in the Superior Court in a *chapter* 29 proceeding.

### III.

One of the reasons advanced by the county judge for invalidating the challenged civilian absentee ballots in the two township committeeman elections was that they were "marked ballots." This was error. The only basis upon which the judge could have proceeded to this conclusion was the mistaken notion that the certificates were attached to the inner envelopes at the time ballots were removed and counted. The uncontroverted testimony was that after the county board of elections had, on election day, met and examined each certificate, it had detached all certificates unanimously considered valid and placed them in a pile. The unopened inner envelopes were placed in a separate pile. It was only after this procedure had been completed for all the absentee ballots for Hunterdon County, that the then unidentifiable sealed inner envelopes were opened and the ballots removed and tallied. The ballots so counted can in no wise be considered "marked."

*L.* 1920, *c.* 366, § 1, amending the General Election Act of 1920, provided that "Any ballot which shall have either on its face or back, any mark, sign, designation or

device whatsoever, other than is permitted by this act, shall be null and void, * * *." In the following year, the 1921 Legislature passed *chapter* 196, *section* 82 of which provided that

"* * * No ballot which shall have either on its face or back, any mark, sign, erasure, designation or device whatsoever, other than is permitted by this act by which said ballot can be distinguished from another ballot, shall be declared null and void, unless the board canvassing said ballots, or the board or officer conducting the recount thereof, shall be satisfied that the placing of said mark, sign, erasure, designation or device upon the ballot was intended to identify or distinguish said ballot; * * *."

It would thus appear that in the interval between the two legislative sessions, the Legislature had decided to make the test as to the voiding of the ballot, because marked, one of intention on the part of the voter. The language of the 1921 act has been continued without significant change in *N. J. S. A.* 19:16–4.

We conclude that nothing that any absentee voter did made his ballot a "marked" ballot. Nor did the procedure followed by the county election board result in any ballot being "marked."

## IV.

We have seen that the second reason given by the county judge for invalidating the civilian absentee ballots in question was that the county board of elections had not followed the procedures called for by *N. J. S. A.* 19:57–24 and 19:57–31.

*N. J. S. A.* 19:57–24, on which the county judge relied, requires in its first paragraph, quoted under Part I of this opinion, that the county board of elections "shall, promptly after receiving each civilian absentee ballot, remove the inner envelope, containing the ballot, from the outer envelope and shall compare the signature and the information contained on the flap of the inner envelope with the signature and information contained in the respective requests for

civilian absentee ballots." The last paragraph of this section of the statute provides that after such investigation the board shall detach the certificate from the inner envelope, unless it has been rejected by it or by the County Court, and mark the envelope so as to identify the election district in which the ballot contained therein is to be voted, as indicated by the absentee voter's home address appearing on the certificate. The procedure in Hunterdon County, as testified to, was that as absentee ballots were received before election day, the clerk of the board opened the outer envelope, compared the signature on the certificate with the county clerk's list of voters to whom absentee ballots had been sent, verified whether the absentee voters were properly registered, and then set aside the sealed inner envelopes, with their flap certificates still attached, for the county board's investigation and action on election day. It would appear that this day is the only time the board sits in Hunterdon County.

It will be seen that the statutory procedure was not strictly followed in that it was the clerk, rather than the board, who opened the outer envelope and made an initial determination as to whether the statutory requirements had been met. The county board itself passed upon the validity of the certificates, but this happened on election day, instead of "promptly" after the receipt of each civilian absentee ballot. It is uncontroverted that the entire membership of the board met on election day, examined and unanimously passed upon the certificates, detached them from the inner envelopes, and then proceeded in the fashion already described by making two piles of certificates and sealed inner envelopes, respectively, and counting the ballots.

It would have been better, and in strict conformity with the requirements of *N. J. S. A.* 19:57–24, for the county board to have opened the outer envelopes as they were received at the county seat and verified the certificates. The certificates would be left attached to the inner envelope until election day. (This is necessary in order to enforce

*N. J. S. A.* 19:57–30, which provides that absentee ballots of voters who die before the opening of the polls on election day shall not be counted.) The only function which the board failed to discharge was opening the outer envelopes—something which its clerk did. The fact that the clerk also verified the certificates by comparing the signatures and information contained on the inner envelope flaps with what appeared in the respective requests for civilian absentee ballots, has no legal significance, for the board repeated and discharged this function, assigned to it under the statute, on election day. The mere opening of the outer envelopes required no exercise of discretion; it was a ministerial act which the board had left for the clerk to perform.

In this connection, it is to be noted that *N. J. S. A.* 19:31–2 provides that in a third-class county like Hunterdon

"* * * [T]he county board * * * shall have the power to appoint temporarily * * * such number of persons, as in * * * its judgment may be necessary in order to carry out the provisions of this Title. * * *

* * * [T]he county board * * * shall prescribe such reasonable rules and regulations as are necessary in the opinion of the * * * county board to carry out the provisions of this Title * * *."

The sole possible defect in the procedure employed is the fact that the certificates were not considered by the county board until election day, when it passed upon them. There is no reason why the absentee ballots should be invalidated because of this. The policy of the courts in election matters has been stated in *Wene v. Meyner,* 13 *N. J.* 185, 196 (1953), where the Supreme Court said:

"* * * Where, as here, there is an unwitting omission of a formal requirement otherwise supplied in substance, the ballots are invulnerable; the overturning of the result in such circumstances would frustrate the will of the voters for errors and omissions of form not related to the merits; and this would do violence to the legislative will. In this regard, *acts and omissions by the district board mandatory before election may for reasons of policy be deemed directory after the election, if it indubitably appears that the election result was not thereby prejudiced. The question is essentially one*

*of fairness in the election.* An election is not vitiated by the defaults of election officers not involving malconduct or fraud, unless it be shown that thereby the free expression of the popular will in all human likelihood has been thwarted. \* \* \*" (Italics ours)

In *Sharrock v. Keansburg,* 15 *N. J. Super.* 11, 19 (1951), this court said:

"The right of suffrage in a government of and by a free people must always be regarded with jealous solicitude. To overthrow the expressed will of a large number of voters for no fault of their own and solely because of some harmless irregularity would in many cases defeat the paramount object of the election laws."

See also, *Kilmurray v. Gilfert,* 10 *N. J.* 435, 440 (1952); *In re Moore,* above, 57 *N. J. Super.* 244 (*App. Div.* 1959).

We therefore hold that there is no reason to invalidate the challenged ballots because the county board passed upon the certificates on election day, rather than promptly after they were received. An infraction of the election procedure as technical as this should not disenfranchise voters who in good faith exercise their right of suffrage. *Cf. N. J. S. A.* 19:3–9.

## V.

Since the County Court did not specifically pass upon the objections raised to 13 of the Bethlehem Township absentee ballots, and the three challenged in Kingwood Township, we shall proceed to do so. We deal first with the Bethlehem Township objections.

The defect in the physician's certificate (his failure to state that the voter would be unable to vote at the polling place on the date of election) must be considered immaterial in the light of this court's holding in *In re Moore,* above. There was enough information upon which the county election board could have based its decision to accept the ballot. Moreover, any deficiency was supplied by a complete certificate handed up to the county judge.

Similarly, the challenge directed at four of the absentee certificates because of some defect in the notary's

certificate should not be considered so material as to invalidate the ballots. *N. J. S. A.* 19:57–23 requires only that a civilian absentee voter swear to the information contained in the certificate "before an official authorized by law to administer oaths in the place where the oath is administered." This was in fact done. Any question as to the four notaries involved being authorized by law to administer oaths, was dissipated when the county judge was presented with proof positive of their authority. *Cf. In re Moore,* above, 57 *N. J. Super.,* at *pages* 254–255.

As for the remaining eight ballots in Bethlehem Township, in which the blank spaces on the left-hand side of the absentee certificate had not been filled in, here again there is no reason for invalidating the absentee ballots. The certificates were otherwise complete, including the voter's name, reason for absence, and the notary's certificate. Even were we to consider these certificates invalid on the narrow, technical ground advanced by the opposing candidate, the result of the election would not be changed.

In the case of Kingwood Township, some of the blanks on the left-hand side of two certificates were left unfilled. However, the blanks which were filled in were sufficient to supply the missing information. *Cf. In re Moore,* 57 *N. J. Super.,* at *page* 256, and our observation that the Absentee Voting Law enjoins us to give a liberal construction to the act in order to effectuate its purpose, as unequivocally expressed in the *Wene* case.

We consider the physician's certificate attached to the third challenged absentee ballot in the Kingwood Township case as quite sufficient to meet the requirement of *N. J. S. A.* 19:57–18.

## VI.

The County Court orders under review are reversed in their entirety, with the direction that the county judge enter orders confirming the respective original certificates of election, as issued to Meyers and Polazneck.