OPINION OF THE COURT
Albert M. Rosenblatt, J.
With the candidates locked in a tie vote, petitioners have brought on this proceeding pursuant to Election Law § 16-106 in connection with the election for the 7th District County Representative for the Dutchess County Legislature, held on November 4, 1986.[1]
*501 Petitioners seek an order directing that the absentee ballot of Raymond J. Kane be opened and counted. Respondents resist, and assert that it is defective because the ballot envelope is undated, and is thereby allegedly in violation of Election Law § 8-410.
Notably, the date of the postmark is clear, unlike Matter of Nicolaysen v D’Apice (100 AD2d 501). Here, the existing documentation and dates are undisputed and conclusive.
We begin with the premise that " 'The right of the voter to be safeguarded against disenfranchisement and to have his intent implemented wherever reasonably possible * * * transcends technical errors’ ”. (See, Matter of Ballien v Alpert, 42 AD2d 302, 303, citing Matter of Weinberger v Jackson, 28 AD2d 559, affd 19 NY2d 995.)
The opening words of the New York Constitution provide that: ''No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land”. (NY Const, art I, § 1.)
The Constitution is a lengthy document, and we take it as instructive that the draftsmen of our Constitution did not discuss voting rights at some more obscure location deep within the document, but that the right to vote was so paramount in their minds as to be expressed first and foremost.
The parties could not produce any case law in which a New York State absentee ballot was challenged because the voter did not fill in the date, nor has the court located any reported case in point. Beyond that, the court’s research into case law and statutes outside of New York, yielded no reported instance in which a court decided the validity of an undated absentee ballot. The reason for this became clearer following the court’s exploration of the absentee ballot statutes of other States. Owing to the immediacy and time constraints in election cases, time did not permit a full 50-State survey of statutes, but after reviewing the absentee ballot statutes in the more populous States, the explanation for this dearth of case law is evident. Most of these States do not have a space for the insertion of a date on the absentee ballot envelope. The court has examined the relevant statutes of California, *502 New Jersey, Illinois, Ohio, Michigan, Nebraska and Texas, among others.[2]
Of these States, only California (Cal Elections Code § 1009) has a date line. There is no date line in the New Jersey statutory absentee ballot (NJ Stat Annot §§ 19:57-16 — 19:57-19), nor is there any in Illinois (see, 111 Election Code, ch 46, § 19-5), Ohio (see, Ohio Rev Code Annot § 3509.04), Michigan (see, Mich Comp Laws Annot § 168.761), Nebraska (see, Neb Rev Stat § 32-835), or Texas (see, Tex Election Code, tit 7, § 86.013). The reason for this is obvious. The exact moment at which an absentee voter signs the ballot envelope is seen as immaterial, provided he signs it and returns it to the Board of Elections within the proper time frame. At bar, the voter Kane was concededly a duly registered voter, who concededly received a proper absentee ballot from the Board, and returned it well in time. There is no claim of deception, dishonesty, or wrongdoing, nor room for any. The documentary evidence, examined by the court and the parties, reveals that Kane, with absolute mathematical certainty, signed and returned the ballot sometime between October 21, 1986 and October 23, 1986. The records of the Board plainly show that Kane signed the application on October 21, 1986, that the application was received by the Board on the same day, that the ballot was postmarked on October 23, 1986, and received by the Board on October 24, 1986. Although Kane did not fill in the date, the postmark date appears clearly on the envelope as October 23, 1986. Whether Kane signed it on Tuesday, October 21, 1986, at 2:00 p.m. or Wednesday, October 22, 1986, at 4:00 p.m. or Thursday, October 23, 1986, at 6:00 a.m. is completely beside the point, and has no bearing whatever on the integrity of the election process. The compliance here is strict enough to establish, beyond any and all doubt, by unquestioned and unquestionable documentation, that the ballot envelope was signed and returned in timely manner.
This is not to say that a date line on the envelope is always superfluous — although many States consider it so. Conceivably, a case may arise — unlike the present one — in which the information may be useful or pertinent, much the same as other information which other States include, but which New York has omitted. For example, the Florida absentee ballot, *503 which has provision for date/notarization (Fla Stat Annot § 101.64) contains boxes by which the voter is directed to check the reason for his absentee status. When a voter failed to check any box, his vote was judicially upheld, and the challenge rejected, because, like here, the omission had nothing to do with the objectives of strictest compliance, namely, the prevention of fraud or disorder (McLean v Bellamy, 437 So 2d 737, 746-748 [Fla 1983]).
We do not for a moment purport to decide New York law based on the facial content of sister State forms. But the omissions of date lines on these sister State forms is instructive because it speaks to the way in which even Presidential elections are decided. Tens of thousands of absentee ballots, without date line, but timely signed and returned, are counted in these populous States, and we can easily understand the reason. The date adds nothing of materiality, and the point is well illustrated by one State, Connecticut, wherein the relevant statute (Conn Gen Stat Annot § 9-158Í) has a date line, but provides as follows: The failure of the voter to date the statement shall not invalidate the ballot. And why should it? Connecticut said what one would expect most any Legislature or Judge to say, if only asked. Unlike Connecticut, New York is silent as to the consequences of date line omission, and that is why the contention is pressed. Given legislative silence, we should not, either on grounds unsupported by national practice, or common sense, apply a rule of such grudging exclusion that it would strip an honest voter of his right to be heard. Considering that the New York Legislature has not decreed that a voter should be denied the franchise in an instance such as this, the court must construe the relevant statutes — so far as they deal with absentee ballot envelopes — to comport with general legislative objectives and to avoid objectionable consequences (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141, 143, 146). Given the basic, constitutional right to vote (NY Const, art I, § 1), the Legislature is empowered to make laws to implement that right, and is expressly authorized to make provision for absentee voting (NY Const, art II, § 2). Indeed, the Congress passed legislation designed to ease its conduct (42 USC § 1973cc et seq.).[3]
In regulating voting, the Legislature, reflective of public *504 will, has been zealous to enhance rather than compromise or defeat the right to vote (McCrary, American Law of Elections, at 1-20). The courts have historically been equally vigilant in enforcing that right (People ex rel. Deister v Wintermute, 194 NY 99,109), so that the honest voter should not be rebuffed.
Sister State decisional law, close in point, supports the validity of the Kane absentee ballot. In Lanser v Koconis (62 Wis 2d 86, 214 NW2d 425) a number of absentee ballots submitted by nursing home residents were held to be valid despite that each ballot envelope was not signed by the voter in the space provided at the bottom of the certification paragraph, but, instead, was signed "in the space at the beginning of the paragraph” (supra, at 95, at 429).
In Matter of Hayden (105 Wis 2d 468, 313 NW2d 869 [1981]) a number of absentee ballots were also challenged. As to one of the ballots, a notary "testified that one of the absentee voters signed the affidavit in her presence and that she notarized the signature. When she took the envelope from the wastebasket, however, she discovered she had failed to date her notarization. She added the date at that time. Her addition of a date could not have influenced the vote, and there is no evidence that she acted fraudulently in doing so. We conclude there is not the slightest evidence of any fraud and that the law was substantially complied with” (supra, at 485, at 876-877). The court therefore concluded that this vote must be counted.
In In re Election in Bethlehem Township (74 NJ Super 448, 465, 181 A2d 523, 532), four of the absentee certificates in issue contain some defect in the notary certificate, which the court held "should not be considered so material as to invalidate the ballots.”
The court also held valid eight other absentee ballots, "in which the blank spaces on the left-hand side of the absentee certificate had not been filled in” (supra, at 465, at 532).
An issue was raised in Miles v Eltzroth (170 Ind App 37, 351 NE2d 77) as to the propriety of counting two absentee ballots that had been returned in opened envelopes, thus removing the cloak of secrecy from the election process. Upholding the validity of these ballots, the court reasoned that "to hold otherwise would be to in effect disfranchise absentee voters who have done everything in their power to cast a valid vote which the law or reason can in good faith demand” (supra, at 44, at 81).
*505 In Stotler v Fetzer (630 SW2d 782 [Tex 1982]) the court considered certain irregularities concerning absentee ballots. In discussing the issue of whether or not election statutes are to be construed as mandatory or directory, the court stated that "It appears that only those statutes, which from their very nature are deemed absolutely essential to accomplish the purposes of constitutional sufferage, are deemed mandatory” (supra, at 784).
Lastly, in Erickson v Blair (670 P2d 749 [Colo 1983]), the court reversed the disqualification of five absentee ballots (no voter qualification box marked, address omitted, election date blank not filled in), while upholding the invalidity of two others (one stated an address outside the election district, the remaining affidavit was unsigned).
The court refused to disqualify the seven absentee voter ballots because there was no "claim nor proof of fraud, undue influence, or intentional wrongdoing in the election” (supra, at 753). The test to be applied "is whether the absent voter affidavits substantially comply with the statutory requirements for absentee voting” (supra, at 753). The court reached the conclusion based upon its analysis "of the realities of modern life [i.e., the mobility of the electorate] and the fundamental character of the right of suffrage * * * the right to vote is a fundamental right of the first order” (supra, at 754). Substantial compliance was, based upon the facts alleged, held to mean "that the absent voter has affixed his or her signature to the affidavit and has provided sufficient information in the affidavit to establish the elector’s qualifications to vote” (supra, at 755-756).
Counsel for petitioners cogently point out that the legislative intent to be served by having the absentee ballot envelopes signed can be gleaned from Election Law § 9-104 (1) (c). This section reads as follows: "If there is more than one ballot envelope executed by the same voter, the one bearing the earlier date of execution shall be accepted and the other rejected. If it cannot be determined which envelope bears the earlier date, then all such envelopes shall be rejected.” In other words, the date on the ballot envelope itself is only relevant in a situation in which a particular voter has cast more than one absentee ballot vote.
There is no contention that Mr. Kane submitted more than one absentee ballot envelope, that being the one now in issue. It also must be stressed that there is no argument or indica *506 tion in the record that any fraud or other similar impropriety was committed or attempted by Mr. Kane.
Lastly, respondent has argued that "An undated certification would surely not enable or permit prosecution and thus it must be presumed that the legislature mandated the dating of the certificate.” We disagree (People v Morris, 61 NY2d 290).
Given the particular facts of this case, and the unassailable conclusion that Mr. Kane’s signature was put on the ballot envelope sometime between October 21 and October 23, 1986, it does not follow that prosecution would be rendered impossible by his failure to date the envelope itself. He signed it, for sure, within a 72-hour period (see, People v Morris, supra). Moreover, it is not contended by respondent that Kane misrepresented any fact of the certification, or that he is anything but a duly registered qualified voter in the district.
Respondent’s reliance upon Matter of Higby v Mahoney (48 NY2d 15) is misplaced. We are dealing here with a voter’s right to vote and not with a candidate’s party primary election designating petition.
The court therefore adjudges and orders that the petition is granted to the extent that the Kane ballot shall be opened and counted before this court at 10:00 a.m. on December 6, 1986.

. The court has rejected petitioners’ challenge to three ballots, one of which was an affidavit ballot, two were military. The decision has been edited for publication.

. Maryland, Iowa, and Minnesota have delegated the responsibility for forms to Election Boards or official agencies (e.g., Minn Stat Annot § 203B.09).

. For some history on "war ballots,” as they were formerly called, see Saxe’s Manual of New York Election Laws, at 183, citing L 1917, ch 815, L 1918, ch 298.