## Matney v. Elswick.

(Decided January 26, 1932.)

184

W. W. BARRETT and W. W. REYNOLDS for appellant.

STRATTON & STEPHENSON and ROSCOE VANOVER, Jr., for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In an election for subdistrict trustee in subdistrict No. 41, in Pike county, held on May 2, 1931, Tilden Elswick and Goble Matney were rival candidates. According to the returns duly certified, Elswick received 47 votes and Matney 46 votes. Matney contested the election on the ground that 9 voters who had voted for Elswick were not legal residents of the district, and that one legal voter who offered to vote for Matney was not permitted to vote. Elswick filed an answer and counterclaim denying the allegations of the petition, and counter contesting on the ground that 9 illegal votes were cast for contestant. On final hearing, the petition was dismissed, and contestant appeals.

Before one who is otherwise qualified to vote may vote, he must have resided in the state for one year, in the county for six months, and in the precinct in which he offers to vote for 60 days next preceding the election. Constitution, sec. 145; Ky. Stats., sec. 1439. The rules for determining the residence of a person offering to vote in so far as applicable to the facts of this case, are set forth in section 1478, Kentucky Statutes, as follows:

"1. That shall be deemed his residence where his habitation is, and to which, when absent, he has the intention of returning.

"2. He shall not lose his residence by absence for temporary purposes merely; nor shall be obtain a residence by being in a county or precinct for such temporary purposes, without the intention of making the county or precinct his home. . . .

"5. The place where the family of a married man resides shall generally be considered his residence, unless the family so resides for a temporary purpose. If his family is permanently in one place,

and he transacts his business in another, the former shall be his residence."

Under these rules, a citizen cannot select for himself a voting place other than the place the law constitutes his legal home and habitation. Penny v. McRoberts, 163 Ky. 313, 173 S. W. 786. If he actually lives in one district, he cannot vote in another, unless he resides in the former merely for a temporary purpose. Though he may have a home, or own property in the district, yet, if he leaves there, and takes up an actual residence elsewhere with the intention of remaining there indefinitely, he becomes a legal voter at the place where he lives, and cannot vote at his former home. In each case the facts must control, and not what the voter says about being absent for a temporary purpose. Thus where one who leaves his home and establishes a home elsewhere, not for the purpose of performing a particular service, or of doing a particular job for another, or engaging in business for a limited time, but with the purpose of engaging in business or obtaining employment for an indefinite period, and remains away for two or three years, and does not return except for the purpose of voting, it cannot be said that he was absent for a temporary purpose.

Applying the foregoing rules, let us examine the votes contested by appellant. First we have the votes of Sarah Hackney, the wife, and Lon Hackney, the unmarried son, of Alex Hackney. Though these two voters say that they were living at Freeburn, 15 miles away from district No. 41, and that all of them had gone there for a temporary purpose, the evidence is conclusive that they had been living in Freeburn district with Alex Hackney for three years. Though they had never voted at Freeburn, Alex Hackney had always voted there; that for some time Alex Hackney had been renting property there, that he then had out a large crop on the place he had rented, and that his rental contract did not expire until March 1, 1932. The fact that Sarah and Lon had never voted elsewhere, or that some of their household goods had been left in subdistrict No. 41, is not controlling. They had remained in Freeburn district for three years, and maintained their home there, and the mere possibility of their return to subdistrict No. 41 at some indefinite time in future was not sufficient to authorize their vote in that district. The same situation exists as

to John Childers and Tora Childers, the son-in-law and daughter of Alex Hackney. For several years they have lived with Hackney on Sycamore Hill in Freeburn. Though claiming that they were temporarily absent from district No. 41 for the purpose of obtaining employment at the mines, they had no home in district No. 41, and had been away too long to claim that they were absent for a temporary purpose. G. Plenny Belcher and Ruth Belcher, his wife, fall in the same category. Though claiming that they were absent for a temporary purpose, they lived and kept house at Freeburn since 1929, and had not kept house at any other place. They were in the habit of coming back to his mother's when he was out of work. He came back the last time on May 1, 1931, which was the day before the election. The case is not one where they were temporarily absent from his mother's home with the intention to return, but one where they were temporarily absent from Freeburn with the intention to return there when work could be obtained.

With respect to R. T. Elswick and his single daughter, Inis Elswick, the facts are these: For two or three years they had been living at Elkhorn City, where he maintains a home, and owns and operates a store and hotel. Though he also owns a home and operates a store in subdistrict No. 41, he had not lived there for several years, and his daughter had never lived there since she had been old enough to vote. It is not even claimed that R. T. Elswick and his daughter were in Elkhorn City, which is some distance from the subdistrict No. 41, for a temporary purpose with the intention of returning to their home in the latter district. He had been living for several years in Elkhorn City and his daughter had been living with him. Clearly he could not live there all the time, and at the same time claim that his home was in subdistrict No. 41. As Wade Williams, who had been working at Freeburn for about three years, and had voted in that district, did not return to subdistrict No. 41 until less than 60 days before the election, it is conceded by contestee that Williams did not have the right to vote for him.

It follows from what we have said that Sarah Hackney, Lon Hackney, John Childers, Tora Childers, G. Plenny Belcher, Ruth Belcher, R. T. Elswick and Inis Elswick and Wade Williams were not entitled to vote

for contestee, and that their votes should be deducted from 47, the number of votes which he received, leaving him a total vote of 38.

Of the 9 votes received by contestant and attacked by contestee as being illegal, it is admitted that Errett Scott, Lucy Scott, and Charlie Johnson were legal voters, and that their votes should not be deducted from contestant's vote. In the circumstances, it becomes unnecessary to determine whether the vote of Alex Ratliff, who offered to vote for contestant, was properly rejected, or whether any or all of the other six votes claimed by contestee to have been illegally cast for contestant were or were not illegal. Contestant received 46 votes, and, even if the 6 votes be deducted, the result is 40 to 38 in favor of contestant. It follows that contestant should have been declared elected.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.