## Commonwealth v. Jewell.

(Decided April 21, 1933.)

BAILEY P. WOOTTON, Attorney General, FRANCIS M. BURKE, Assistant Attorney General, and WM. J. BAXTER, Commonwealth's Attorney, for appellant.

J. W. CAMMACK and R. L. BRONAUGH and T. A. PERRY for appellee.

Opinion of the Court by Judge Dietzman—Certifying the Law—

On the trial of the appellee charged with having violated section 1477a of the Kentucky Statutes in the making of an alleged false oath as to the place of his residence for the purpose of voting in the general election of 1931, he was found not guilty under a peremptory instruction of the court given to the jury at the close of the commonwealth's case. The commonwealth has appealed for the purpose of having the law certified.

The evidence adduced by the commonwealth disclosed that, at the fall election of 1931, appellee's right to vote in the North Wilmore precinct No. 4 of Jessamine county was challenged on the ground that he was not even a resident of this state, and hence not entitled to vote. Appellee insisting on his right to vote, the oath provided for by section 1477a of the Statutes was administered to him, and he swore that he had resided in the state of Kentucky one year, the county of Jessamine six months, and said precinct No. 4 sixty days, next preceding such election. To establish that such statements in this oath were false, the commonwealth showed only these facts: Appellee was a student at Asbury College, which is located in Wilmore. He entered that college in September, 1930, coming to Wilmore from Chicago, where he had lived. That the physical residence of appellee was in Wilmore from September, 1930, until the election in 1931, except for a short absence in the winter of 1930-31, when appellee, who had broken his arm, went to Chicago to have it reset, and except for a further short absence in the latter part of June and July of 1931, when appellee on the closing of the college for the school year went to Chicago to get his wife, he bringing her back with him in August to live in Wilmore, is conceded. During the winter of 1930-31, it seems that appellee's wife had stayed in Chicago, where she was working. The commonwealth showed by Mr. Stewart, the mayor of Wilmore, that one day in April or May, while walking down the street with the appellee, Mr. Stewart asked the appellee what he was going to do when school was out, and the latter replied that he was going "home" to Chicago. Mr. Jones, who ate at the same boarding house where appellee took his meals during the winter of 1930-31, testified that appellee spoke of "living in Chicago" and of

having voted in an election in August or September of 1930, wherein Bill Thompson was running for mayor. He also testified that appellee had stated that when he got through college he was going "somewhere in a foreign country" to preach. It is on these meager statements of Mr. Stewart and Mr. Jones that the commonwealth relies to establish the fact that appellee's presence in Kentucky was only for a temporary purpose and that it did not constitute a residence entitling appellee to vote. The issue presented in this case was whether or not appellee had made a false oath as to his residence, and it devolved upon the commonwealth to establish that appellee's assertion under oath that he had resided in Kentucky and Jessamine county and precinct No. 4 as set out in the affidavit was false. As stated, his physical presence in Kentucky, save for the two temporary absences, is conceded, but it is claimed, because appellee expressed the determination at some future period to go to foreign countries to preach and because he referred to his old place of residence in Chicago as "home," that this established the falsity of the oath. We are clear that the trial court did not err in ruling to the contrary. In the case of Matney v. Elswick, 242 Ky. 183, 45 S. W. (2d) 1046, 1047, we said:

"The rules for determining the residence of a person offering to vote, in so far as applicable to the facts of this case, are set forth in section 1478, Kentucky Statutes, as follows:

" '1. That shall be deemed his residence where his habitation is, and to which, when absent, he has the intention of returning.

" '2. He shall not lose his residence by absence for temporary purposes merely; nor shall he obtain a residence by being in a county or precinct for such temporary purposes, without the intention of making the county or precinct his home. * * *

" '5. The place where the family of a married man resides shall generally be considered his residence, unless the family so resides for a temporary purpose. If his family is permanently in one place, and he transacts his business in another, the former shall be his residence.'

"Under these rules, a citizen cannot select for

himself a voting place other than the place the law constitutes his legal home and habitation. Penny v. McRoberts, 163 Ky. 313, 173 S. W. 786. If he actually lives in one district, he cannot vote in another, unless he resides in the former merely for a temporary purpose. Though he may have a home, or own property in the district, yet, if he leaves there, and takes up an actual residence elsewhere with the intention of remaining there indefinitely, he becomes a legal voter at the place where he lives, and cannot vote at his former home. In each case the facts must control, and not what the voter says about being absent for a temporary purpose."

Measured by these rules, it is clear that the commonwealth failed to disprove that the legal residence of the appellee was in Wilmore as he swore it was. He actually lived there for a year prior to the time he offered to vote. He brought his wife to live there with him. He was earning his own living. He stated in his affidavit in effect that his living in Wilmore was with the purpose of establishing it as his residence. It devolved on the commonwealth to disprove this statement of animus manendi. The only evidence it had to do so was the testimony of Stewart and Jones. The statement of appellee to Jones about having voted in the Thompson election in Chicago proved nothing, for this election, according to Jones, took place in August or September, 1930, and appellee did not claim that he came to Wilmore to live prior to September, 1930. The reference of appellee to Chicago as "home" in his casual conversation with Stewart standing alone has no real probative force. Frequently those who have gone to foreign climes to make their fortunes and who by every rule are residents of such places and entitled to vote therein refer to the place of their childhood as "home." We doubt not that most of the members of the Kentucky societies of New York, Washington, or Chicago always refer to this state as their home. At Christmas holidays voluntary exiles returning to the scenes of their youth speak of "going home." So that the casual remarks of appellee as to Chicago being "home" did not overcome the evidence that in fact Wilmore was where he really lived. Of course it should require no citation of authority to establish the proposition that one does not lose an actual residence in a particular place because he may plan to leave that place

at some time in the future and take up a residence elsewhere. Thus in the case of Klutts v. Jones, 21 N. M. 720, 158 P. 490, 492, L. R. A. 1917A, 291, it was held that a public school teacher who takes up her residence in the town where she teaches, intending to remain there so long as she got employment there or until she could better herself, was a resident of such town for the purpose of voting there. In the course of that opinion, the court said:

" 'In the case of Cessna v. Meyers [Smith, Elect. Cas. 60], reported and strongly approved by Judge McCrary, it was said: "A man may acquire a domicile, if he be personally present in a place and elect that as his home, even if he never design to remain there always, but design at the end of some short time to remove and acquire another. A clergyman of the Methodist Church who is settled for 2 years may surely make his home for 2 years with his flock, although he means, at the end of that period, to remove and gain another." '
\* \* \*

"Were this not the true rule, many people in this state would be deprived of the right to vote. Take, for example, a railroad employee who is sent by the company from place to place as his services are required, could it be said that he was not entitled to vote in a given place where he was employed, and where he lived, and had resided for the requisite time, because, perchance, he expected at some future time to be assigned to some other place? Another example is afforded by Methodist ministers, referred to in the excerpt from McCrary on Elections. It is commonly known that they are only assigned to a given charge for a period of 1 year, at the end of which period they may be reassigned to some other charge or returned to the same one. Certainly they can have no present intention of making the place of their assignment their permanent home, but they do intend, as did the witness in this case, to make the place of their work their home until some event transpires which works a change of residence.

"The question of whether a person is a resident of one place or another is largely a question of intention, and, where the intention and the acts

of the party are in accord with the fact of residence in a given place, there can be no doubt of the fact that such party is a bona fide resident of the place where he intends to and does reside, and that he has the right to exercise all the rights and privileges accorded actual residents of such place, provided he comes within the provisions of the law regulating such rights.''

We therefore conclude that the trial court did not err in peremptorily instructing the jury to find the appellee not guilty as it did. The law is so certified.