**Samuel R. MOORE, Movant,**

**v.**

**Willis D. TILLER et al., Respondents.**

Court of Appeals of Kentucky.

Nov. 18, 1966.

Barkley Sturgill, Prestonsburg, for appellant.

Eugene C. Rice, Paintsville, for appellee.

CLAY, Commissioner.

This cause has come before us on a motion for a temporary injunction under CR 65.07. An order granting such relief was entered on November 4, 1966, but due to the importance of the question involved, we set forth the reasons for our decision which effectively terminated the controversy.

This declaratory judgment suit sought the removal of respondent's name from the ballot in a school board election held in Martin County on November 8, 1966. The principal ground of disqualification asserted was that respondent was not a legally qualified voter in the division of the district he sought to represent on the county school board.

KRS 160.180 provides that no person shall be eligible for membership on a board of education unless he is a "voter of the district from which he is elected". KRS 160.210 provides that in a county school district, which is involved here, members shall be elected from "divisions" of the district.

Clearly the "voter" referred to in KRS 160.180(1) (b) means a legally qualified voter. As observed in Hall v. Reid, Ky., 305 S.W.2d 923, 924, the meaning of such a term depends upon the connection in which it is used. While for interpretative purposes in Chapter 117 of the Kentucky Revised Statutes, KRS 117.600(1) defines a "voter" as any name contained in any registration list, whether the voter is an illegal or legal one, it certainly cannot be that the term "voter" in KRS 160.180 has such a technical connotation. This is made clear by KRS 160.180(2) which provides for an automatic vacation of the office if the board member "moves his residence" from the district for which he was chosen, thereby recognizing the residential, as opposed to the registration, requirement. We are convinced the statute required a candidate to be a fully qualified legal voter, and to determine his status as such, we must

resort to section 145 of the Kentucky Constitution.

That section provides that one of the qualifications of a "voter" is that he shall have *"resided in * * * the precinct in which he offers to vote sixty days next preceding the election".* (Emphasis added.) Our question is whether respondent, though absent therefrom, maintained his residence in the Black Log Precinct so as to be a legal voter therein, and entitled to represent the division in which this precinct lies as a member of the Martin County Board of Education.

■ The residential requirements of the Constitution or a statute must have some reasonably determinable aspect and the objective of such a requirement deserves consideration. We construe it to be that a voter should exercise this privilege in an area where he is most likely to be cognizant of local issues and candidates. By the same token, a person running for office from a particular area should be so closely associated with the problems of that area that he can effectively represent the inhabitants thereof. Living there assures the accomplishment of these objectives. The question is not where a person has a sentimental desire to vote, or what group of people he wishes to represent, but where the law considers him best qualified to exercise his political rights and privileges.

The circuit court made the following pertinent findings: (1) Respondent had lived outside the division involved for the last three years; (2) he was a registered voter in the Black Log Precinct; and (3) he maintained his legal residence there.

■ The facts show that respondent grew up in Division 2 and had always voted there (although he had been temporarily absent from the precinct on several occasions). Approximately three years ago he

and his wife moved into an apartment in Inez, which is outside the division and precinct. He testified he did not intend to permanently change his residence and, as a matter of fact, since the filing of his nominating petition, he has moved back into the precinct and established a home there. However, the crucial issue is whether respondent retained his legal voting residence in the division precinct up to the termination of his three-year absence.

KRS 117.610 provides in part:

"The following rules, so far as applicable, shall be observed in determining the residence of a person offering to vote:

"(1) A voter's residence shall be deemed to be at the place where his habitation is, and to which, when absent, he has the intention of returning;

"(2) A voter shall not lose his residence by absence for temporary purposes merely; nor shall he obtain a residence by being in a county or precinct for such temporary purposes, without the intention of making that county or precinct his home." [1]

■ As set forth in the statute just quoted, the basic consideration with respect to a voter's residence is the place where his *habitation* is. As defined in Webster's New International Dictionary, Second Edition, a habitation is: "Place of abode; settled dwelling; residence; house." When respondent departed from the Black Log Precinct he actually abandoned his "habitation" there. However, for certain purposes the law recognizes that a person may still retain his voting residence in what was his former habitation area even though absent therefrom. Thus, as the statute provides, a voter does not lose his residence by being absent therefrom for *temporary* purposes.

[1.] Some question may be raised concerning the extent to which the legislature may bind the judiciary in the interpretation of constitutional phraseology, but these statutory provisions appear reasonable and substantially conform to our judicial guidelines in determining what constitutes a residence for voting purposes.

For that reason the purpose, nature and extent of the absence must be examined.

■ ■ The intention of a person who bodily moves to another dwelling place may often be of controlling importance. For example, as recognized by KRS 117.610(2), if the voter moves to another place with the intention to establish a new home there on something other than a temporary basis, he loses his former residential status forthwith. See Nelson v. Gass, 27 N.D. 357, 146 N.W. 537. The same is true if the voter intends to establish a permanent residence elsewhere, which respondent in this case said he did not intend. On the other hand, an intention to return to the precinct from which the voter has departed may or may not be determinative.

■ When a person retains a habitation or dwelling, intention to return to *it* is a most important consideration and may oft-times be controlling. On the other hand, when a person no longer has a physical place of abode in a particular *area*, his intention to return to the area is of lesser significance. Otherwise, any citizen of Kentucky could retain his original voting precinct in perpetuity by simply intending to take up residence somewhere therein at some future date. Clearly the determination of residence, where no place of habitation exists in the departed precinct, must rest upon more concrete considerations than a general prevailing intention.

As stated in 25 Am.Jur.2d, Elections, section 67 (page 760):

"The intention to be considered is that which is manifested by the voter's acts. If there exists a discrepancy between declarations of intention and acts, the declarations yield to the conclusion to be drawn from the acts. If the intention and acts of a party are in accord with the fact of residence in a particular place, there can be no doubt of the fact that the party is a resident of such place.

"The word 'intention' as used in a statute fixing qualifications of voters in respect of residence does not mean an undefined or undefinable purpose on the part of the voter to return to his former residence at some unknown time during the course of his life. To entertain a doubtful, vague, or unequivocal purpose to return does not prove 'intention' as used in the statute."

Similar language was used in Everman v. Thomas, 303 Ky. 156, 197 S.W.2d 58.

A case directly in point is Matney v. Elswick, 242 Ky. 183, 45 S.W.2d 1046. In that case it appeared that the voters whose qualifications were questioned had, as in the case before us, been absent from their home district for three years. They had moved fifteen miles away and rented a dwelling. They testified they had moved for a temporary purpose, but we held that as they had maintained a home elsewhere for this long a period, the mere possibility of their return to the original voting place at some indefinite time in the future was not sufficient to retain their former voting residence. This was so even though they had left household goods at their original place of residence. The opinion makes the following observations (page 1047):

"Under these rules, a citizen cannot select for himself a voting place other than the place the law constitutes his legal home and habitation. Penny v. McRoberts, 163 Ky. 313, 173 S.W. 786. If he actually lives in one district, he cannot vote in another, unless he resides in the former merely for a temporary purpose. Though he may have a home, or own property in the district, yet, if he leaves there, and takes up an actual residence elsewhere with the intention of remaining there indefinitely, he becomes a legal voter at the place where he lives, and cannot vote at his former home. In each case the facts must control, and not what the voter says about being absent for a temporary purpose. Thus one who leaves his home and establishes a home elsewhere, not for the purpose of performing a particular service, or of doing

a particular job for another, or engaging in business for a limited time, but with the purpose of engaging in business or obtaining employment for an indefinite period, and remains away for two or three years, and does not return except for the purpose of voting, it cannot be said that he was absent for a temporary purpose."

In the present case, while it is apparent respondent may have intended to retain ties with his former area of residence and expected someday to return there, the fact is that he had for quite a substantial length of time maintained a habitation in another place. He did not even testify that living in Inez was for a temporary purpose. The record does not show that his residing there was in any sense involuntary or necessitated by a limited expediency.

█ It has been said that to reside means to "[l]ive, dwell, abide, sojourn, stay, remain, lodge." Western-Knapp Engineering Co. v. Gilbank, CCA Cal., 129 F.2d 135, 136. Respondent had physically resided in Inez for three years, and without any significant factors being shown, other than a "floating" intention to return to his former residential area, it is clear to us that living in another place for so long a period cannot be held a "temporary" absence from his former habitation. Certainly respondent was qualified to register and vote in Inez.

Since respondent had lost his legal voter status in Division 2, he was not qualified to serve the district he sought to represent as a member of the Martin County School Board, and for this reason we directed that his name be removed from the ballot.

HILL and STEWART, JJ., dissenting.

HILL, Judge (dissenting).

Although Section 145 of the Constitution defines a qualified voter as one who "resides" in the territory in which he undertakes to vote, our case law, as well as KRS 117.610 holds that a resident who is temporarily absent therefrom with the intent to return does not lose his residence so as to operate as a disfranchisement.

The Legislature of this Commonwealth, with forethought and wisdom, provided in Chapter 117 (Qualification, Registration and Purgation of Voters) that:

"The following rules, so far as applicable, shall be observed in determining the residence of a person offering to vote: * * * (2) A voter shall not lose his residence by absence for a temporary purpose merely; * * *"

In 98 A.L.R.2d, Voting Residence, p. 489, it is written:

"The universal rule on acquiring a new domicil of one's own choice has the essential elements of (1) physical and bodily presence in the new locality; (2) an intent to abandon the old domicil; and (3) a concurrent intent to adopt another domicil in the new location."

The following is quoted from Everman v. Thomas, 303 Ky. 156, 197 S.W.2d 58, 63, which is cited in the majority opinion:

"In case of doubt as to the voter's residence, it is resolved in favor of the permanency of residence in the precinct where he votes."

Before looking at the facts in the present case, I copy the first sentence of a quotation in the majority opinion taken from 25 Am.Jur.2d, Elections, Section 67, p. 760, which reads as follows: "The intention to be considered is that which is manifested by the voter's act."

Now, to the record in the present case in an effort to ascertain Tiller's "intention" with respect to whether his absence from the precinct in which he was registered was temporary or permanent.

Tiller testified he was registered in Blacklog precinct, which is in Educational Division 2; that he "never voted anywhere else except when" he was "going to school

at Morehead," and he voted then by absentee ballot. He said he had "always been back there (Blacklog) on election day"; that he was temporarily away from Division 2 only to attend Morehead State College for one year, to work on construction at Morehead, for "two or three weeks" while in Columbus, and one summer when in Michigan; that he moved into an apartment at Inez and resided there for three years, which period ended the Sunday before he testified; that he didn't regard his living in the apartment as a permanent residence; that he started constructing his home in April 1966, completed it, and moved into it just prior to giving his testimony. He stated he had never had the intention to permanently change his residence or place of registration to any place other than Division 2.

The able and impartial trial judge, free from the influence of school politics, found as a matter of fact that Tiller at all times nourished the intention of residing in Division 2 and that his journeys away therefrom were temporary in nature, and, in effect, as described by Judge Willis in Thompson v. Emmert, 242 Ky. 415, 46 S.W.2d 502, his "absence depends upon the completion of some temporary task, or upon the discharge of some duty of a temporary nature." I do not consider the findings of the trial judge clearly or at all erroneous. CR 52.01. The majority opinion hurtles this code provision without so much as a murmur.

I can find no authority in Matney v. Elswick, 242 Ky. 183, 45 S.W.2d 1046, to support the majority opinion. The facts are entirely different. It is sufficient to quote the following from Matney:

> "It is not even claimed that R. T. Elswick and his daughter were in Elkhorn City, which is some distance from subdistrict No. 41, for a temporary purpose with the intention of returning to their home in the latter district."

Aside from the fact that the result of the majority opinion has disfranchised one-fifth of the voters of Martin County on a doubtful hypothesis, it has more far reaching consequences. There are thousands and thousands of Kentuckians "temporarily" away from their claimed places of residence where they are registered to vote under our law. They cherish the privilege of returning to their "claimed" voting places and will travel great distances to exercise the right of suffrage. In the event the purgation boards enforce the law as announced in the majority opinion, a great number of persons temporarily away from their voting places will be disfranchised. The modern trend in this Nation of nomads is to allow man the right of suffrage wherever he may be found on election day.

I would affirm the judgment of the trial court.

STEWART, J., joins in this dissent.