ROBERT C. ZIMMERMAN, Secretary of State
You advise that each election your office receives inquiries from local election officials whose voter registration lists contain names of people who have apparently moved from the election district to another state many years before, yet through the years have continued to vote by absentee ballot, claiming to reside at their last previous address within the election district. This address is normally either the voter's previous home, which he sold upon leaving the municipality, or premises which he rented and, in both instances, is now owned and occupied by another party. Since, in either event, the local address is usually one to which the voter could not reasonably be expected to return, you request some guidelines to better enable you to assist election officials handling such situations.
Residency is, of course, a basic qualification which must be established before any person is entitled to vote. Article III, sec. 1, Wis. Const., provides, in part, that a qualified elector is one who "shall have resided" in this State and the election district where he offers to vote for a minimum period of time. See also sec. 6.02, Stats. Rules or standards *Page 215 
governing residence as a qualification for voting have been part of the statutes for many years. The current provisions are found in sec. 6.10, Stats. The following subsections of that statute appear most material here:
"(1) The residence of a person is the place where his habitation is fixed, without any present intent to move, and to which, when absent, he intends to return.
"(2) When a married man's family resides at one place and his business is conducted at another place, the former establishes the residence. If the family place is temporary or for transient purposes, it is not the residence.
"* * *
"(5) A person shall not lose his residence when he leaves his home and goes into another state or county, town, village or ward of this statefor temporary purposes with an intent to return.
"* * *
"(8) No person gains a residence in any ward, town or village of this state while there for temporary purposes only.
"* * *
"(10) If a person moves to another state with an intent to make hispermanent residence there, or, if while there he exercises his right as a citizen of that state by voting, he loses his Wisconsin residence.
"(11) Neither an intent to acquire a new residence without removal, nor a removal without intent, shall affect residence." (Emphasis added)
Before further discussing the above rules or standards as they may apply to situations such as you describe, I wish to emphasize the fact that in order to insure that an ultimate determination on a question of voter qualification is effective, it must be reached by procedures in accord with the statutes governing elections. In the present instance, the specific question of voter residency will probably most often arise under secs. 6.48 (challenging registration), 6.50 (revision *Page 216 
of registry) or 6.93 (challenging the absent elector), Stats. All election officials should become familiar with these procedures.
Section 6.48 (1), Stats., sets forth the procedure whereby the registration of electors, in municipalities other than cities of the first class, may be challenged. Under this section, when any elector of the municipality submits an affidavit to the clerk challenging another elector's qualifications to vote and the reasons therefore, the clerk is to follow the procedure set forth in the statute to determine whether the challenged voter is or is not qualified. Section 6.48 (1) (b), Stats., specifically provides, in part, that:
". . . If the clerk determines the person is not qualified, the name shall be stricken from the registry and the proper precinct officials notified."
Further opportunity to resolve a question of voter residence arises in the course of revision of the voter registry. Section 6.50 (2) (c), Stats., which applies to municipalities of 500,000, or under, authorizes the municipal clerk to cancel a registration upon receipt of reliable information that a registered elector has moved from the municipality, where the elector is notified by the clerk and thereafter fails to apply for continuation of registration within 30 days. The prompt use of this statutory authorization may serve to minimize the problem situations you describe.
Finally, sec. 6.93, Stats., provides that the vote of any absent elector may be challenged for cause the same as if the ballot had been voted in person. Furthermore, under this section, the inspectors of elections are granted authority to hear and determine the legality of theballot. Thus, the statute permits the challenge of a person's absentee ballot with respect to his qualifications to vote under the laws of this State, just as sec. 6.92, Stats., allows the challenge of other electors in person. It has been held that both of these statutes treat considerations different than do the provisions of sec. 9.01 (1) (a), Stats., previously contained in sec. 6.66 (1), 1963 Stats., which authorize the board of canvassers upon a recount to consider "defect, irregularity or illegality" *Page 217 
in the conduct of the election and make necessary correction of the count of the ballots. Olson v. Lindberg (1957), 2 Wis.2d 229, 85 N.W.2d 775.
Normally, of course, the voter is not present in person to cast his ballot as would otherwise be the case under sec. 6.92 Stats., and pertinent inquiries cannot be made of him by the question and answer method as herein contemplated. However, the absentee voter's certificate-affidavit presumably constitutes his constructive appearance at the polls and specific attention is drawn to such appearance when the election inspectors announce the absent elector's name upon opening the carrier envelope containing his ballot. Sec. 6.88 (3) (a), Stats. The apparent reason for such announcement is for the very purpose of allowing challenge. Thereafter, the envelope containing the ballot may not be opened until the inspectors find that the person offering to so vote is a "qualified elector of the precinct," and if found not so qualified the vote shall not be accepted or counted, but must be rejected. (See procedure for handling rejected absentee ballots outlined in sec. 6.88 (3) (b), Stats.) On the other hand, should the inspectors decide to receive a challenged absentee ballot, they must first properly identify the ballot by its tally sheet or voting list number as required by sec. 6.95, Stats.
Now to the basic legal principles governing such a decision relating to the absentee voters residence. The Wisconsin Statutes regulating absentee voting are to be liberally construed in aid of the right of suffrage, and one should look to the whole and every part of the election laws, the intent of the entire plan, the reasons and spirit for their adoption, and try to give effect to every portion thereof. Sommerfeld v. Board ofCanvassers of City of St. Francis (1955), 269 Wis. 299, 69 N.W.2d 235.Petition of Anderson (1961), 12 Wis.2d 530, 107 N.W.2d 496. However, the legislature may determine that fraud and violation of the sanctity of the ballot can much more readily be perpetrated by use of an absentee ballot than under the safeguards provided at a regular polling place. Gradinjanv. Boho (1966), 29 Wis.2d 674, 684, 139 N.W.2d 557. The procedures for challenge, *Page 218 
etc., described in the above statutes appear to be designed, at least in part, with this in mind.
Two fairly recent and exhaustive annotations dealing with both the validity of absentee voters' laws (97 A.L.R. 2d 218) and the construction and effect of absentee voters' laws (97 A.L.R. 2d 257) are of some assistance in considering the matter of the challenge of absentee ballots. The following citation, appearing in 94 A.L.R. 2d at p. 275, is of particular note here:
"§ 17. Necessity of legal residence in voting district.
"A would-be absentee voter is disqualified to cast his vote in a district of which he is not a resident.
"Thus, in Tuthill v. Rendelman (1944) 387 Ill. 321, 56 N.E.2d 375, it was held that an absentee ballot, challenged at the time it was sought to be cast, on the ground that the voter no longer lived in the precinct, it appearing that she made her home with her son part of the time and with her daughter part of the time, both of whom lived out of the precinct, had been properly excluded by the judges of election. The court said that where a vote is challenged, it appearing that the clerk of elections objected to it in the particular case, the judges of election have power to determine the legality of the ballot and whether it should be cast. . . ."
See also 29 C.J.S., Elections, § 210 (1), at pp. 579-580.
The actual determination by the appropriate election official as to the residence of the absentee elector must, of course, be consistent with the standards set forth in sec. 6.10, Stats. Case law provides us the perspective necessary to better understand and more accurately apply these standards.
Very generally speaking, the residence of a person is said to be determined by a combination of two elements, intent and physical presence. Apparently, the above quoted provisions of sec. 6.10, Stats., merely state or attempt to apply this common law concept. See Miller v.Sovereign Camp W.O.W. (1909), 140 Wis. 505, 509, 122 N.W. 1126; In reBurke (1938), 229 Wis. 545, 561, 282 N.W. 598. Although *Page 219 
physical presence is essential to the establishment of a residence in the first instance, continuous physical presence is not essential to maintain that residence.
Our court has also referred to the general rule that a man must have a habitation or domicile somewhere and that he can have but one at the same time for one and the same purpose and that in order to lose one, he must acquire another. Miller case, supra; Seibold v. Wahl (1916), 164 Wis. 82,85, 159 N.W. 546. Thus, when a person has once acquired or established a residence, it is generally held that such residence is presumed to continue until a new one is established, and the law of this State places the burden on the person who asserts the nonresidence of a voter to prove such assertion. In re Burke, supra, p. 556; 29 C.J.S., Elections, § 21, p. 77.
As a practical matter, it must be accepted at the outset that there is no absolute criterion or guideline which will at once determine the question of residence in every case. Each case depends on its particular facts. 25 Am. Jur. 2d, Elections, § 66, p. 759; Seibold case, supra, p. 88. However, the general situation you describe does raise a question whether the absence of the voter from the place he claims as his residence is temporary only or whether he has established a reasonably permanent residence elsewhere. Although the answer to such question is said to depend primarily on the intention of the person involved, intention, in turn, is evidenced not only by the voter's statements regarding his intent but also by his conduct. 29 C.J.S., Elections, § 19, p. 71. It is, in fact, well established in Wisconsin that, although intention is the primary element in determining the status of an elector, his own statement as to any such mental resolution will not of itself control when not in harmony with the physical facts and circumstances of the case. Seibold case, supra, p. 84; In re Burke,supra, p. 561. Thus, it is said that the best evidence of intention to establish a voting residence ordinarily comes from a person's acts rather than his declarations. In re Erickson, 18 N.J. Misc. 5, 10 A.2d 142. As stated in 25 Am. Jur. 2d, Elections, § 67, p. 760:
"Although intention alone is insufficient to establish a residence for voting purposes, it is an important factor to *Page 220 
be considered in determining whether or not a residence has been acquired. In fact, a good-faith intent of a voter to make a place his home for all purposes is an essential element entering into the determination of the question of residence. The intention to be considered is that which is manifested by the voter's acts. If there exists a discrepancy between declarations of intention and acts, the declarations yield to the conclusion to be drawn from the acts. If the intention and acts of a party are in accord with the fact of residence in a particular place, there can be no doubt of the fact that the party is a resident of such place."
It is possible for a person to be temporarily absent from his place of residence even though that absence continues one or two years, or more. Furthermore, the circumstances attending his absence may be completely consistent with and actually explain why he does not maintain any particular physical location within the election district during such absence. For example, where an elector rents an apartment within the election district, the fact that he chooses not to spend the sum of money necessary to "hold" said apartment during a short absence would not, in and of itself, justify a determination that he had thereby lost his residence in his election district. Therefore, the fact that a voter can point to no present address within that election district as the specific place to which he intends to return will not necessarily preclude him from claiming his residence in that district. See Langhammer v. Munter,80 Md. 518, 31 A. 300. On the other hand, long continued habitation is an important circumstance in determining the question of domicile, in the absence of other evidence showing intention, and many other facts may be shown to further indicate the establishment of a new domicile — the exercise of a franchise; the payment of income taxes; the place of aman's dwelling house; the place of his business, trade or occupation, and others. Will of Eaton (1925), 186 Wis. 124, 202 N.W. 309.
The previously quoted subsections of sec. 6.10, Stats., place primary emphasis on whether the place of habitation has permanence, i.e., is fixed without any present intent to move, as distinguished from residence merely for temporary *Page 221 
purposes. In 25 Am. Jur. 2d, Elections, § 68, at pp. 760-761, the concept of permanence is discussed as follows:
"The word `residence' for political or voting purposes means a place of fixed present domicil. The term carries with it an element of permanence. . . . However, it is not necessary that there be an intention to remain permanently at the chosen domicil; it is sufficient that the place is for the time being the home of the voter to the exclusion of other places. . . ."
And as further stated in 25 Am. Jur. 2d, Elections, § 69, at p. 761:
". . . Thus, the fact that a person intends to remove at a future time does not of itself defeat his residence before he actually does remove. . . ."
Likewise, Chief Justice Winslow in his concurring opinion in theSeibold case, supra, at p. 87, notes:
". . . To acquire a voting residence in an election district one must have made it his fixed habitation (1) for no merely temporary purpose, (2) without present intention of removal elsewhere or return to his former abode for residence purposes, and (3) with intention of returning to such habitation whenever absent therefrom. The purpose is notnecessarily temporary because it is expected to end at some time more orless remote in the future. Practically all human purposes have thisquality. . . ." (Emphasis added)
Similar statements may be found in other cases. Thus, in Barrett v.Parks 352 Mo. 974, 180 S.W.2d 665, the court held that, as regards the right to vote, a statute providing that the place where the family shall "permanently reside" shall be deemed a place of residence does not mean that such residence may never be changed but that there exists no presentintention to change it; so too, Everman v. Thomas, 303 Ky. 156,197 S.W.2d 58 and Matney v. Elswick, 242 Ky. 183, 45 S.W.2d 1046, indicate that a person who takes up a permanent abode in a locality becomes a resident therein for voting although he may intend to return to his former home at some indefinite time in the future or there is a mere possibility that he may return to his former home. And, a *Page 222 
change of voting residence has been held to occur where a voter, because of employment, moves to another county, and establishes his home there, even though he intends, on his retirement, to return to the county in which he formerly resided and still owns a house there. Harris v.Textor, 235 Ark. 497, 361 S.W.2d 75.
Based on the foregoing, then, under circumstances such as you describe, it can be generally stated that a vague general determination to return to Wisconsin in the distant future, may very well be insufficient to support a contention that residency elsewhere is only for temporary purposes. However, as pointed out previously, each determination of residency rests on its own particular facts or circumstances and must be individually judged. Such guidelines as exist must, therefore, be applied in this context.
RWW:JCM