No. 51,130

IN THE MATTER OF THE ELECTION OF FRED MASSEY TO POSITION NO. 3, BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 469, LANSING, KANSAS.

FRED MASSEY, Contestee, *Appellant.*

MARGARET BERGER, Contestant; LARRY SCHELLER, LEAVENWORTH COUNTY CLERK; and UNIFIED SCHOOL DISTRICT NO. 469, *Appellees.*

(605 P.2d 147)

Opinion filed January 19, 1980.

*Michael J. Waite,* of Leavenworth, was on the brief for the appellant.

*Edward J. Chapman, Jr.,* of Leavenworth, argued the cause and was on the brief for appellee Unified School District No. 469; and *Patrick J. Reardon,* county attorney, argued the cause and was on the brief for appellee Larry Scheller, Leavenworth County Clerk.

The opinion of the court was delivered by

MILLER, J.: This is an election contest arising out of a school board election. Margaret Berger, a registered voter in member district No. 3, successfully contested the election of Fred Massey to position No. 3 on the board of education of Unified School District No. 469. He appeals, contending that the trial court erred as a matter of law.

An election contest is a special statutory procedure governed by laws which were extensively changed by Laws of 1978, ch. 138. The sections here applicable now appear as K.S.A. 1979 Supp. 25-1434 to 1452, inclusive.

The facts are not disputed. The territory within Unified School

District No. 469 is divided into three separate areas known as "member districts." Two members of the school board are elected from each of the three member districts, and one member is elected at large; the seven members so elected comprise the board.

Fred Massey went to the Leavenworth County Clerk's office one day before the filing deadline. A deputy clerk advised him that his residence was in member district No. 3, and Mr. Massey then paid the fee and filed for election to position No. 3. See K.S.A. 1979 Supp. 25-2020. After the filing deadline had passed, Mr. Massey discovered that he had filed for the wrong position. He lives, and at all times material herein has lived, in member district No. 2. Mr. Massey was the only candidate for position No. 3; he received some 600 votes at the regular election held on April 3, 1979. Three days later, a certificate of election was issued to him by the Leavenworth County Clerk; and within five days Margaret Berger, as contestant, filed a notice of contest with the Clerk of the Leavenworth District Court. Other parties to the proceeding are Mr. Massey, as contestee; the county clerk; and the unified school district, which intervened.

The trial court expedited the matter. Trial was held on May 1, and on the following day the court issued a memorandum opinion. The court concluded:

"[T]hat the contestee was ineligible to hold the office to which he was elected; that the provisions of K.S.A. 25-2022a are applicable to the facts of this contested election; that the provisions of K.S.A. 25-702(a) do not apply to the facts of this contested election; that the certificate of election issued to the contestee should be invalidated and revoked; that the election insofar as the office in question is concerned was void; [and] that the board of education should be ordered to fill by appointment the position in question in accordance with the provisions of K.S.A. 25-2022 . . . ."

Several statutes should be noted:

"Subject to the limitations provided in this act, any of the three voting plans described in this section may be used in the election of board members. The three voting plans are:

. . . .

"(b) Voting plan-B: All electors, who are otherwise qualified according to law, and who reside in the member district may vote in the primary election for the member positions of such member district and for the at-large member position. All electors, who are otherwise qualified according to law, and who reside in the school district may vote in the general election for all member positions, including the at-large member position, to be filled." K.S.A. 1979 Supp. 72-8003.

"When a school district has a member district method of election the unified school district shall be divided into . . . three member districts for the three district method. . . . Each member district shall be represented on the board by one or more persons residing in the member district. . . . In the three district method two members shall reside in each member district. . . .

". . . In the three district method the member district numbers shall be 'one,' 'two' and 'three.' . . .

". . . In the three district method member position numbers shall be 'one' and 'four' for member district one, and 'two' and 'five' for member district two, and 'three' and 'six' for member district three." K.S.A. 1979 Supp. 72-8009.

"Any board [of education] shall have power to fill by appointment any vacancy which occurs thereon . . . ." K.S.A. 25-2022.

"Whenever a school district has a voting plan or method of election which provides for member districts, persons elected or appointed to be a member of the board of education of such school district shall reside in the member district corresponding to the member position to which such person is elected or appointed unless such person is a member at-large of the board of education. The member at-large may reside anywhere within the school district." K.S.A. 1979 Supp. 25-2022a.

The trial judge found K.S.A. 1979 Supp. 25-2022a to be determinative. The contestee contended before the contest court and contends here that K.S.A. 25-702(*a*) is controlling; that it applies to this election; and that it cures what would otherwise be a defective election. The statute provides:

"In all elections for the choice of any officer, except the offices of governor and lieutenant governor, unless it is otherwise expressly provided, the person having the highest number of votes for any office shall be deemed to have been elected to that office; and whenever it shall satisfactorily appear that any person has received the highest number of votes for any office, such person shall receive the certificate of election, notwithstanding the provisions of law may not have been fully complied with in noticing and conducting the election, so that the real will of the people may not be defeated by any informality of any officer."

Appellant does not challenge the power and authority of the legislature to prescribe qualifications for school board members. Generally, the legislature is empowered to prescribe the qualifications for holding public office, providing it does not exceed its constitutional power or impose conditions of eligibility inconsistent with the constitution. The legislature's authority to prescribe educational eligibility criteria for the office of county superintendent of instruction, an office created by the constitution without stated eligibility criteria, was upheld in *Jansky v. Baldwin,* 120 Kan. 332, 243 Pac. 302 (1926). We said: "When an office is created by an act of the legislature, that body has authority to name the terms of eligibility, and modify them at

will." 120 Kan. at 333. Boards of education for unified school districts are creatures of statute, and therefore the legislature may establish standards of eligibility for board members that are not inconsistent with the constitution.

In *Leek v. Theis,* 217 Kan. 784, Syl. ¶ 11, 539 P.2d 304 (1975), we said:

"The creation of various offices and departments of government not otherwise provided for in the Kansas Constitution is a legislative function. It is also a legislative function to determine the qualifications of the officers and by whom they shall be appointed and in what manner they shall be appointed. The Kansas Constitution contains no limitation on who may be appointed, and there is no constitutional restriction on the legislature exercising its power as it shall see fit."

Residency requirements for election to school board positions have been considered and enforced by courts of other states. *Moore v. Tiller,* 409 S.W.2d 813 (Ky. 1966) directs the name of a candidate be struck from a school board election ballot because the candidate was not a legally qualified voter in the division of the district he sought to represent. The Kentucky representation scheme was similar to that considered in this appeal. Ky. Rev. Stat. § 160.180 provided that no person shall be eligible for board membership unless a voter of the district from which he is elected. Section 145 of the constitution imposed a residency requirement upon voter qualification. Ky. Rev. Stat. § 160.210 provided for county school districts to be divided into "divisions." Ky. Rev. Stat. § 160.180 (2) provided for automatic vacation of office if the board member moved his residence from the district for which he was chosen. The court said: "Since respondent had lost his legal voter status in Division 2 [through moving his dwelling from division 2 without intent to return], he was not qualified to serve the district he sought to represent as a member of the Martin County School Board . . . ." *Moore v. Tiller,* 409 S.W.2d at 817.

*State ex rel. Askew v. Thomas,* 293 So. 2d 40 (Fla. 1974), a quo warranto proceeding, determines a school board member could not retain office after moving from the district area from which elected. The facts show Thomas was elected while residing in School Residence Area No. 1 and after election moved to School Residence Area No. 4, within the same school board district. The Florida Constitution provides for a school board comprised of five or more members elected as provided by law. The qualifications for members are statutory rather than constitutional. The

Florida court rejected respondent's suggestion "that the people would be denied their choice of her as the elected official for the office in question if the residency requirements . . . are invoked." 293 S.W.2d at 43. The "people, through the constitution and their Legislature, thought differently in giving priority to the residency requirement." 293 S.W.2d at 43. The court declared the position representing Residence Area One vacant.

Appellant urges K.S.A. 25-702(*a*) applies and corrects any deficiencies in his election. A careful examination of the cases where this statute has been held effective to sustain the majority vote despite election irregularities reveals that it has never been used to cure any irregularity which went to qualification of the candidate. The irregularities considered are:

Closing the polls at noon; custody of ballots and poll box. *Morris v. Vanlaningham,* 11 Kan. *269 (1873).

Defective election notice. *Wood v. Bartling, Mayor,* 16 Kan. 109 (1876).

Incomplete definition of precinct boundaries in order creating voting precinct. *Wildman v. Anderson,* 17 Kan. 344 (1876).

Ineligibility of candidate at time of election, but ineligibility removed prior to the issuance of a certificate of election and prior to taking office. *Privett v. Bickford,* 26 Kan. 52 (1881).

Irregularities in the ballot format. *Short v. Davis,* 90 Kan. 147, 132 Pac. 1172 (1913).

Irregularity in the marking of ballots. *Wall v. Pierpont,* 119 Kan. 420, 240 Pac. 251 (1925).

The *Bickford* case is the only Kansas case where K.S.A. 25-702(*a*) was invoked and where qualification of the candidate was challenged, and in that instance the disqualification was removed before the votes were canvassed and the certificate of election was issued. The decision did not rest upon the application of K.S.A. 25-702(*a*) or its predecessor. We have not overlooked other authorities cited by appellant, but find them readily distinguishable and not persuasive.

We think that the importance of geographical representation on school boards, expressed through the complex scheme for school board makeup precisely set forth in the statutes, belies any intent that nonresidency be a technical irregularity subject to correction by K.S.A. 25-702(*a*). That statute itself speaks of irregularities "in noticing and conducting the election." Disqualification by

160

nonresidency, continuing and not corrected at any stage by the candidate, is not such an irregularity.

The judgment is affirmed.