In re Recount Proceedings: Olson, Appellant, vs.
Lindberg, Respondent.

*October 11—November 5, 1957.*

For the appellant there were briefs and oral argument by *Richard W. Ruppel,* attorney, and *Daniel I. D'Amico* of counsel, both of Cumberland.

For the respondent there was a brief and oral argument by *F. E. Van Sickle* of Barron.

STEINLE, J. Sec. 11.57, Stats., specifies the requirements for the delivery of absentee-ballot blanks. It provides:

"Upon receipt of such request not less than three days prior to such election, such clerk, or his deputy or deputies shall write on the back and outside of the official ballot in the space for the official indorsement of the ballot clerk, his initials or name and his official title and shall mail to the applicant, postage prepaid, said official ballot or ballots if more than one are to be voted at said election, or such officer shall deliver said ballot or ballots to the applicant personally at the office of the clerk, not less than one secular day before said election. *Any such ballot not mailed or delivered personally as herein stated shall not be counted.*" (Italics supplied.)

It appears without dispute that upon application made to Severn Raffesburger, town clerk of the town of Almena, 34 absentee ballots were issued by him for the election in question. Ten of that number were rejected by the election officials. No reasons for their rejection were stated by the officials on their official statement of defective and challenged ballots. Twenty-four of the absentee ballots as applied for were cast. Six or seven of said number had not been challenged. The balance were challenged. The inspectors of the election had not caused the voting number of the respective voters of the challenged absentee ballots to be written upon the back of said ballots as required by provision of sec. 6.52, Stats. The absentee ballots, however, contained on the back of each thereof the signature of the town clerk. An examination of the 24 absentee ballots received by the inspectors and bearing the signature of the town clerk on the reverse side of each thereof, reveals that 19 of such ballots were for Lindberg; four were for Olson; one was in blank.

The trial court found (upon basis of the referee's report) that some of the absentee ballots requested were delivered in person by the town clerk at his office; some were mailed; a number of them were delivered personally by the town clerk to the applicants at their respective homes.

The town clerk testified as to the manner in which the 24 absentee ballots were delivered. It is uncontroverted upon this appeal that 18 of the 24 absentee ballots cast were delivered by the clerk to applicants at their homes. It is agreed that there is no evidence of record that five of the 24 absentee ballots were not delivered in accordance with provisions of sec. 11.57, Stats. There is a dispute as to whether under the evidence it was established that the town clerk delivered the absentee ballot to a voter, Hattie M. Becker, in contravention of provisions of sec. 11.57. The plaintiff Olson maintains that the evidence indisputably indicates that the town clerk delivered the absentee ballot to Hattie M.

Becker at her home. The defendant Lindberg submits that the evidence does not indicate the place of the delivery of the absentee ballot to said voter, and that since the plaintiff has not met the burden of proof to show that said ballot was not properly delivered, it must be presumed that it was not delivered contrary to the provisions of the statute. In support of his contention, the plaintiff relies on part of an answer in the testimony of the town clerk as such appears in the transcript of the evidence, and which reads as follows: "Hattie M. Becker works at Fox's, could not come in so she asked for a ballot; Melita Heppner, they moved to Cameron so she asked for a ballot, and Rudolph Heppner, I took them over to *them* and they voted there;" (Italics supplied.)

The plaintiff maintains that the italicized word "them" includes the ballot blank of Hattie M. Becker. We cannot agree with the plaintiff's view in this respect. A correct understanding of the statement in question requires only a reading of the town clerk's entire answer and the question to which such answer was addressed. The question and answer appearing in the transcript reads as follows:

"*Q.* Can you look at this list and recall who called at your home for a ballot and whom you mailed a ballot to, and whom you took a ballot out to. Could you go through that list and tell the court what was done with each ballot there? *A.* Richard King, Turtle Lake, came over to my place and voted right at my home. Vernon Kunkle, Turtle Lake. I sent his ballot; William Olson, Turtle Lake, now in the armed forces, I mailed him a ballot; Warren King, he came to my place to vote; Philip Lambrecht, he came to my place to vote; Mrs. Alma Snoshine, I have taken hers out to her house where she voted; John Grafin Sr. Turtle Lake, and Ida Grafin, his wife, I took those out; Henry Becker Jr. was taken out and Henry Becker Sr. also; Hattie Splatt moved to Lindstrom, asked for a ballot and I mailed them; Emil Splatt asked for a ballot and I mailed it to him; Helen Kunz, Turtle Lake, had no way of getting in, asked for a ballot, I took it out to her; Mina Torbeck, Almena, I took

it to her; Mary S. Becker, I took it out to her; Adolph Lambrecht, Venturia, California, I mailed; Julius Miller, I took to him; Mary Benz, I did not take it to her, someone else took that to Rice Lake where she voted and they brought it back; Pauline Zuehlke, I took to her; Herman Nerling, I took that to him; Hattie M. Becker works at Fox's, could not come in so she asked for a ballot; Melita Heppner, they moved to Cameron so she asked for a ballot, and Rudolph Heppner, I took them over to them and they voted there; M. P. Kettle takes care of old people at Rice Lake and could not come in to vote, asked for an absentee ballot and I delivered it but he did not deliver it to me; Grace Lindberg, I took it up to her; Violet Becker, was up in the Cumberland hospital, her husband came to me and wanted an absentee ballot, I gave him one and he took it to his wife to vote and he delivered it to me in person; Dolly I. Hanson, Turtle Lake, asked for an absentee ballot; H. C. Hanson asked for an absentee ballot; Edith Pimple and Emma Pimple, both asked for absentee ballots; Eliza Lehinger asked for an absentee ballot; Alfred Wastrom asked, which one of the supervisors took out to him."

As is manifest in the transcription, the reporter inserted a semicolon instead of a period as punctuation after each sentence following the first in the answer. Each sentence pertained to a situation different from the others described by the witness in his answer. Considered as a separate sentence, which in context it must be, it is clear that the statement "Hattie M. Becker works at Fox's, could not come in so she asked for a ballot," creates an inference as to the reason for such voter's application for a ballot, but it does not indicate the place of the delivery of the ballot to her. It conclusively appears that the italicized word "them" refers only to Melita Heppner and Rudolph Heppner and does not include Hattie M. Becker.

Since the plaintiff failed to establish that Hattie M. Becker's ballot was delivered to her contrary to provisions in sec. 11.57, Stats., it must be considered that the total number

of absentee ballots not shown to have been delivered by the town clerk contrary to the statute, is six.

The trial court determined that the board of canvassers correctly permitted in the count for the office of town chairman all of the 24 absentee ballots in question. In its memorandum decision the court observed that some of the absentee ballots had been challenged, while others were not challenged. The court noted that because of lack of identification as to the ballots which had been cast as challenged and those cast as unchallenged, no distinction or separation of them could be made. The court was of the view that it would be improper to deprive those persons who were qualified to vote in the election of their right to so vote because of the failure of the election officers to have performed their duty, and also because there was no fault on the part of such voters. The court cited as authority for this view the cases of *State ex rel. Symmonds v. Barnett* (1923), 182 Wis. 114, 195 N. W. 707, *Ollmann v. Kowalewski* (1941), 238 Wis. 574, 300 N. W. 183, and *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. (2d) 235.

The decisive question here is whether the provision in sec. 11.57, Stats., "any such ballot not mailed or delivered personally as herein stated shall not be counted" is mandatory or directory. Manifestly the trial court was of the view that sec. 11.57 was directory, for in each of the cases which the court cited and upon which it relied, the situations involved were controlled by statutory provisions which were deemed to be directory only.

In *Sommerfeld v. Board of Canvassers, supra,* the court pointed out the distinction between mandatory and directory provisions of statutes treating with elections. It was there said (p. 303):

"With reference to the construction of election statutes as mandatory or directory the rule is stated as follows in 29 C. J. S., Elections, p. 310, sec. 214:

" 'The difference between mandatory and directory provisions of election statutes lies in the consequence of nonobservance: An act done in violation of a mandatory provision is void, whereas an act done in violation of a directory provision, while improper, may nevertheless be valid. Deviations from directory provisions of election statutes are usually termed "irregularities," and, as has been shown in the preceding subdivision, such irregularities do not vitiate an election. Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election.' "

In the *Sommerfeld Case* it was observed that Title II, denominated "Elections" embraces chapters 5 through 12 of the statutes. When that case was decided, sec. 5.011, Stats., provided then as it does now that:

"Title II shall be construed so as to give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to comply with some of its provisions."

Sec. 11.59, Stats., which was in effect when the *Sommerfeld Case* was determined, provided *inter alia* that absentee ballots were to be returned to the clerk in person by the voters. There was no provision in that statute determining that the votes were not to be counted unless such was done. The absentee ballots in that case were returned to the city clerk by agents of the voters. By reason of the fact that there was no provision in sec. 11.59 declaring that the vote shall not be counted unless the absentee ballot was returned to the city clerk as prescribed, it was determined that sec. 11.59 was directory only. In the light of the provision in secs. 5.011 and 11.59 the delivery of the absentee ballots by agents in the

*Sommerfeld Case* was determined not to constitute an invalidation of the ballots. In the instant matter it is considered that the action of the town clerk in delivering 18 of the 24 absentee ballots to voters other than at his office contrary to provision of sec. 11.57, was not an informality or irregularity that could be corrected by application of the provisions in sec. 5.011. True, there is no claim or evidence of fraud, nor was solicitation of voters by the clerk established under the evidence. However, it is obvious that by virtue of the rather strict provision in sec. 11.57, prohibiting the count of an absentee ballot which was not delivered to the clerk's office or mailed there, the legislature intended to indicate public opposition to the solicitation of voters by a clerk charged with the responsibility of receiving the delivery in person by mail of absentee ballots, or to afford an opportunity for such purpose. We are obliged to conclude that the provisions in sec. 11.57, to the effect that the ballots should not be counted, is mandatory, and that in the instant cause the 18 absentee ballots delivered by the town clerk to places other than his office, may not be counted.

The court accepted the referee's determination that six or seven of the 24 absentee ballots which had been cast were not challenged. On this appeal the defendant maintains that such ballots may not be excluded from the count, and that since they cannot be identified, credit for such number of votes must be computed in defendant's favor in the total count. In this regard the defendant relies upon provisions in secs. 6.50 and 11.63, Stats.

Sec. 6.50, Stats., provides in part:

"CHALLENGES. Each inspector shall, and any elector of the county may, challenge every person offering to vote whom he shall know or suspect not to be duly qualified as an elector. If such a person is challenged as unqualified, one of the inspectors shall tender to him the following oath or affirmation: . . . [Form of oath stated] ; and shall thereupon put

questions as follows: . . . [Nine separate questions with subdivisions in some relating to citizenship of the voter, his residence, his age, whether or not he is interested in a bet or wager depending upon the result of the election, whether or not he was engaged in a duel, etc.]."

Obviously this provision relates to challenge as to qualifications of a person to vote under the laws of this state.

Sec. 11.63, Stats., provides:

"CHALLENGE OF MAIL VOTE. The vote of any absent or sick or disabled voter may be challenged for cause and the inspectors of election shall have all the power and authority given by law to hear and determine the legality of such ballot as if the ballot were cast by the voter in person."

It is our considered view that sec. 11.63, Stats., permits the challenge of a person's absentee ballot with respect to his qualifications to vote under the laws of this state as in sec. 6.50, *supra,* and that both of said statutes treat with considerations different than do the provisions in sec. 6.66 (1), which authorize the board of canvassers upon a recount to consider defect, irregularity, or illegality in the conduct of the election and make necessary correction of the count of the ballots. Sec. 6.66 (1) in part provides:

"Whenever . . . , any elector who voted . . . upon any proposition, voted for at any election, . . . or, in the case of an annual, . . . election in any . . . , town, . . . within three days after the result of such election is declared, shall file with the . . . town . . . clerk, . . . a verified petition setting forth that . . . , he voted . . . such . . . proposition at said election, and that he is informed and believes that a mistake . . . has been committed . . . in the counting . . . of the votes cast for the office for which he was a candidate, . . . or specifying any other defect, irregularity, or illegality in the conduct of said election, said board of . . . , town, . . . canvassers, . . . shall reconvene . . . and proceed to ascertain and determine the facts alleged in said petition and make correction accordingly and recount the ballots . . . in accordance therewith. . . ."

In view of the provisions in these respective statutes, we are obliged to conclude that if absentee ballots are improperly delivered in contravention of sec. 11.57, Stats., the board of canvassers is under duty to invalidate and not include such ballots in the total count, whether they are challenged at the election, or not.

None of the 18 absentee ballots, which were invalid by reason of the fact that they were not delivered to the town clerk at his office or mailed there, may be counted. The plaintiff concedes that the remaining six of the 24 absentee ballots, not shown to have been improperly delivered by the town clerk to the voters involved, shall be counted in favor of the defendant, notwithstanding the inability of the board of canvassers to particularly identify those ballots. Since 19 of the 24 ballots in question were cast in Lindberg's favor, such number must be subtracted from the total of 173 votes found to have been cast in his favor, thus leaving a total of 154 to his credit. By adding the six votes conceded by the plaintiff, the result is a total of 160 in Lindberg's favor. Subtracting the four of the 24 votes cast in Olson's favor from the total of 164 found to have been cast in his favor, there remain 160 total votes in Olson's favor. The result of the election is thus a tie vote. The situation is controlled by sec. 5.21, Stats., which provides:

"TIE VOTES. In every case of a tie vote, the tie shall forthwith be determined by lot by the canvassers."

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to return the matter to the canvassers for disposition in accordance with the provision of sec. 5.21, Stats.

CURRIE, J. (*dissenting*). I find myself in disagreement with the majority opinion, which holds that the provision in sec. 11.57, Stats., as to the clerk delivering the absentee ballot

personally at his office, is mandatory and not directory. By such determination 18 electors of the town who had legitimately requested absentee ballots have been disenfranchised merely because the clerk was obliging enough to personally deliver such ballots at these electors' homes instead of mailing them, or insisting that the ballots be called for at the clerk's home, which was his office.

Conceivably the provision for personal delivery of absentee ballots at the clerk's office was inserted in the statute for the convenience of an elector, who knows he is going to be absent from the municipality on the day of the election, and not for the purpose of restricting the manner of personal delivery of ballots by the clerk. This being so, such provision should be held to be directory only. This is because courts should be extremely hesitant about adopting a construction of election statutes which disenfranchises voters, not because of their own act but because of the act of some election official.

I would affirm the judgment below.