PETITION OF ANDERSON: ANDERSON, Appellant, v. BUD-ZIEN, Respondent.

*January 12—February 7, 1961.*

532

For the appellant there was a brief and oral argument by *William H. Bowman* of Milwaukee.

For the respondent there was a brief by *Herbert L. Mount* and *Samuel Wiviott,* both of Milwaukee, and oral argument by *Mr. Mount.*

BROADFOOT, J. Upon this appeal three absentee ballots are challenged. They were included among the 10 challenged in the proceedings in circuit court. One of the ballots is challenged because the application therefor was requested one day before the election. The second ballot is challenged because the application therefor was dated two days before the election. The third ballot is challenged because the application therefor was made more than sixty days before the election.

It is contended by the petitioner that none of the three ballots can be counted because of the provisions of sec. 11.57, Stats., which reads as follows:

"Upon receipt of such request not less than three days prior to such election, such clerk, or his deputy or deputies shall write on the back and outside of the official ballot in the space for the official indorsement of the ballot clerk, his initials or name and his official title and shall mail to the

applicant, postage prepaid, said official ballot or ballots if more than one are to be voted at said election or such officer shall deliver said ballot or ballots to the applicant personally at the office of the clerk, not less than one secular day before said election. Any such ballot not mailed or delivered personally as herein stated shall not be counted."

Although statutes permitting absentee voting have been in existence for a number of years and although the language thereof is sometimes ambiguous and in one instance, which we will mention, inconsistent, there have not been many cases involving the construction of these statutes brought to our attention. Among the more-recent cases are *Sommerfeld v. Board of Canvassers,* 269 Wis. 299, 69 N. W. (2d) 235; *Olson v. Lindberg,* 2 Wis. (2d) 229, 85 N. W. (2d) 775; and *Kaufmann v. La Crosse City Board of Canvassers,* 8 Wis. (2d) 182, 98 N. W. (2d) 422. In the *Sommerfeld Case* we said, pages 302, 303:

"Our statutes are not only divided into chapters but they are divided into titles. Title II, denominated 'Elections,' embraces chapters 5 through 12 of the statutes. Sec. 5.011, Stats., provides that Title II shall be construed so as to give effect to the will of the electors, if that can be ascertained, notwithstanding informality or failure to comply with some of its provisions. . . .
". . . In passing upon statutes regulating absentee voting, the court should look to the whole and every part of the election laws, the intent of the entire plan, the reasons and spirit for their adoption, and try to give effect to every portion thereof."

Throughout the statutes with reference to elections the intent of the legislature is apparent. It is to encourage and assist qualified electors to cast their ballots for candidates of their choice. To prevent fraud, the legislature in some instances has specifically stated that there must be strict compliance with a statute or a ballot cannot be counted. In so far as we have been called upon to construe the statutes

we have held that where the legislature has provided in explicit language that absentee ballots shall not be counted unless certain provisions of the statute are complied with, compliance with those provisions is mandatory. Where it has not done so expressly and in clear language we have held that the provisions regulating absentee voting are directory, and that strict compliance therewith is not required.

Sec. 11.55, Stats., refers to the application of qualified electors for absentee ballots. There is no direction by the legislature that applications not strictly in conformity therewith disqualify voters who are otherwise eligible to vote. A time element is expressed therein which states that electors may apply not more than sixty nor less than three days before an election for ballots to be forwarded to them by mail. Or they may apply in person to the proper election official at his office not later than during the regular office hours of the day prior to an election and there vote. In sec. 11.57, which is quoted above, the sixty-day period is not mentioned but the clerk is directed to mail ballots not less than three days prior to an election upon proper application being made.

The trial court held that the time element in both sections was directory. Any other construction would make the two sections inconsistent. A qualified elector has a right by statute to apply by mail for ballots within three days prior to an election. If a qualified elector in Milwaukee made application for ballots three days before an election the application would not normally be received in the office of the board of election commissioners until after the expiration of the three-day period. If all of sec. 11.57, Stats., is held to be mandatory and no ballots could be mailed less than three days prior to an election, then electors who had fully complied with sec. 11.55 would be deprived of their right to vote.

In our search for the legislative intent in the language employed in these two sections we note that time itself is not the essential point. An elector may apply in person at the

office of the clerk or of the board of election commissioners one day prior to an election. This is another indication of the fact that the legislature is attempting to encourage and to assist qualified electors who will be unable to appear at the polls on election day.

One elector filed an application for ballots more than sixty days prior to the election held on April 5, 1960. The petitioner claims that invalidates the ballots that were mailed in response to that application, perhaps ten days prior to the election. The secretary of the board of election commissioners testified at the hearing herein and stated in detail what their procedure was. Early applications received before ballots are ready for distribution are checked with the poll list to see that the applicant is a qualified voter. A list thereof is made which is open for public inspection. The applications are filed alphabetically and when the ballots are ready for distribution they are mailed out at one time to all then on the list. Later applications are serviced as they arrive.

If the sixty-day period was a mandatory provision the secretary of the board, as a conscientious official, should have, and presumably would have, notified the applicant that the request for ballots could not be fulfilled because the application was dated a couple of days too early. This would have permitted the applicant to file a new application. We do not feel that it would be within the bounds of reason to require this added detail, and we affirm the finding of the trial court that the ballots issued in response to that application could be validly voted.

The petitioner insists that the last sentence of sec. 11.57, Stats., makes all of the language within the section mandatory. As we have stated above, such construction could make that section inconsistent with sec. 11.55 and deprive voters otherwise qualified, and who have done everything they were directed to do by the statute, of their right to vote. We firmly believe this would be contrary to the legislative intent

when looking to the whole and every part of the election laws. Sec. 11.57 directs the clerk in processing applications for ballots to indorse the same and to mail, postage prepaid, to the applicant. When in the last sentence of this section the legislature provided that any such ballots not mailed as therein stated shall not be counted, it was referring to the manner of indorsing the ballot and mailing it, postage prepaid, and not to the time element.

There is no claim of fraud. The three electors whose ballots are challenged were residents of the proper ward and were registered voters. In making their applications in two instances as late as they did, they were indeed fortunate that the ballots were able to reach them by mail and to be returned in time. The secretary of the board of election commissioners testified that some absentee ballots were received too late to be counted. That, however, was the fault of the voters and not of the board of election commissioners of the city of Milwaukee which, so far as the record herein reveals, is attempting to carry out the legislative intent in aiding and assisting qualified voters who might not otherwise be able to vote.

After both the petitioner and respondent had rested in the proceedings before the circuit court, the petitioner asked permission to reopen the case to call another witness. The trial court refused to permit him to do so and the petitioner now claims that was error. The record reveals that the petitioner made the request in the following language:

"Now, Your Honor, I don't know whether Your Honor would like to hear that, but back there is Mr. Sobiszewski who is an Anderson voter who tried to get a ballot for someone who is going to be out of town by mail within the three days and he was refused."

The petitioner does not point to any section of the statute that would have permitted Mr. Sobiszewski to get a ballot for

some other person who was going to be out of town or to put in an application for him. To permit a reopening of the testimony would have been within the discretion of the trial court in any event, but in response to this request there certainly was no error.

*By the Court.*—Judgment affirmed.