LANSER, Appellant, v. KOCONIS, Respondent.

*No. 216.   Argued January 2, 1974.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 425.)

For the appellant there was a brief by *McKay & Martin*, attorneys, and *F. James Sensenbrenner, Jr.*, of counsel, all of Cedarburg, and oral argument by *Mr. Sensenbrenner*.

For the respondent there was a brief by *John J. Valenti* and *Dominic H. Frinzi*, both of Milwaukee, and oral argument by *Mr. Valenti*.

CONNOR T. HANSEN, J.  It is our opinion that two issues are dispositive of this appeal:

1. Does the manner in which the Wauwatosa city clerk delivered 51 absentee ballots to residents of the Luther Manor Nursing Home, located in Precinct 3, Ward 8, in the city of Wauwatosa, invalidate those of the 51 absentee ballots which were actually cast in this election?

2. Does the manner in which the certificate on 18 absentee ballot envelopes cast by absentee voters in various precincts of the 15th District invalidate them?

*Luther Manor absentee ballots.*

Fifty-one residents of Luther Manor made application for absentee ballots. Only 33 of these residents of Luther Manor actually cast their absentee ballots. There is no challenge to the manner in which the residents of Luther Manor applied for the absentee ballots or returned them to the city clerk.

The challenge goes to the manner in which the city clerk delivered the 51 absentee ballots to the individuals who had applied for them.

Sec. 6.87 (3), Stats., provides:

**"6.87 Absent voting procedure. . . .**
"(3) The municipal clerk shall mail it postage prepaid to the elector's residence unless otherwise directed, or shall deliver it to the elector personally at the clerk's office."

The record reflects that Alvin Jung was an employee of the Wauwatosa police department. His primary duty was to act as special courier for the city of Wauwatosa, and in such capacity he handled the mail for the city police department, the fire department, and city hall. James Neuman, the Wauwatosa city clerk, directed Jung to deliver a box containing the 51 absentee ballots and ballot envelopes to Luther Manor. Jung delivered the box, containing what he believed to be absentee ballots, to Luther Manor. He did not know the number of absentee ballots in the box, nor did he recall the name of the woman to whom he gave the box. He took nothing else to Luther Manor and did not return with any of the material.

It is the position of the appellant that these 33 ballots are invalid because the city clerk did not mail the absentee ballots, postage prepaid, to the electors' residences or deliver the ballot to the elector personally in the clerk's office as provided by statute.

There was a total of 75 absentee ballots cast in the 3d precinct, 8th ward. The 33 absentee ballots cast by the residents of Luther Manor were combined with the other absentee ballots from this precinct. A tabulation of these 75 absentee ballots reflects there were 59 votes cast for supervisor. Koconis received 41 votes and Lanser received 18 votes. Apparently 16 of the absentee ballots contained no vote for supervisor. There is absolutely no way by which it can be determined how the 41 votes for Koconis, 18 for Lanser, and 16 blank supervisor ballots were distributed among the total of 75 absentee ballots cast in this precinct. In fact, it is conceivable that all 16 absentee ballots containing no vote for supervisor could have been among the 33 absentee ballots cast by residents of Luther Manor.

There is nothing in the record which would in any way indicate any connivance, fraud or undue influence, and the parties make no such assertion. Likewise, there is no suggestion that the absentee electors from Luther Manor themselves did not comply with the absentee voting requirements.

The issue then resolves itself to a question of whether the specific delivery requirements placed upon the city clerk by sec. 6.87 (3), Stats., are mandatory to the extent that these 33 absentee ballots should be declared invalid.

In the case before us, there was substantial compliance with the absentee voting procedure in all respects and full compliance in so far as the electors are concerned. If we were to consider the provisions of sec. 6.87 (3), Stats., mandatory, and thus invalidate the 33 absentee ballots, we would be required to do so as a result of the provisions of sec. 6.87 (6), which provides:

"(6) The ballot shall be returned so it is received by the municipal clerk in time for delivery to the polls before the closing hour. Any ballot not mailed or delivered as provided in this section shall not be counted."

In *Gradinjan v. Boho* (1966), 29 Wis. 2d 674, 681, 139 N. W. 2d 557, this court said:

"The rule for the construction of election statutes as to whether mandatory or directory, adopted by this court in *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. (2d) 235, and *Olson v. Lindberg* (1957), 2 Wis. (2d) 229, 235, 85 N. W. (2d) 775, is as follows:

" ' "The difference between mandatory and directory provisions of election statutes lies in the consequence of nonobservance: An act done in violation of a mandatory provision is void, whereas an act done in violation of a directory provision, while improper, may nevertheless be valid. Deviations from directory provisions of election statutes are usually termed 'irregularities,' and, as has been shown in the preceding subdivision, such irregularities do not vitiate an election. Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election." ' "

Title II of the Wisconsin statutes deals with elections. Sec. 5.01, Stats., provides as follows:

"**Scope.** (1) CONSTRUCTION OF TITLE II. Title II shall give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of its provisions.

" . . . ."

In *Gradinjan v. Boho, supra,* p. 682, it was explained that:

"In keeping with sec. 5.011, Stats., this court has quite consistently construed the provisions of election statutes as directory rather than mandatory so as to preserve the will of the elector. Statutes which have been held to be directory and not mandatory and the cases so holding

are as follows: Sec. 6.23 (11), *State ex rel. Tank v. Anderson* (1927), 191 Wis. 538, 211 N. W. 938; sec. 6.32, *State ex rel. Bancroft v. Stumpf* (1867), 21 Wis. 586 (*579); sec. 6.41, *Ollmann v. Kowalewski* (1941), 238 Wis. 574, 300 N. W. 183; sec. 6.60, *State ex rel. Graves v. Wiegand* (1933), 212 Wis. 286, 249 N. W. 537; sec. 10.36, *State ex rel. Oaks v. Brown* (1933), 211 Wis. 571, 249 N. W. 50; sec. 11.55, *Petition of Anderson* (1961), 12 Wis. (2d) 530, 107 N. W. (2d) 496; sec. 11.59, *Sommerfeld v. Board of Canvassers, supra.*"

In *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. 2d 235, the court construed as directory only the statutory requirement that the ballot of an absentee voter "'. . . shall be mailed by such voter, postage prepaid, to the officer issuing the ballot, or if more convenient it may be delivered in person.'" The court explained as follows:

". . . Modern transportation has greatly affected our social and economic lives and many persons find it necessary or convenient to be away on election day. The number of absentee ballots is increasing rather than decreasing. Where possible, our statute should be interpreted to enable these people to vote." *Sommerfeld, supra,* page 302.

In concluding that substantial compliance with the statutory delivery requirement was sufficient, the court held that:

"An absentee ballot is inclosed in an envelope, upon which appears the affidavit of the elector. To tamper with the ballot the envelope would have to be opened and resealed. There is no claim that any of the envelopes had been tampered with in any way, nor is there any claim of fraud in this case. The complaint as to the delivery of the ballots is purely technical. We conclude, therefore, that in order to fulfil the spirit of our election laws the last sentence of sec. 11.59, Stats., is directory only, and that a delivery of ballots by agent is a substantial compliance therewith." *Sommerfeld, supra,* page 304.

In *Olson v. Lindberg* (1957), 2 Wis. 2d 229, 85 N. W. 2d 775, this court determined it was obliged to construe the then existing delivery statute as mandatory and declare the absentee ballots therein being considered as invalid. However, we are of the opinion that the appellant reads and attempts to apply *Olson* too literally. In *Olson,* the town clerk personally delivered the absentee ballots to the various electors' homes, and in some instances returned the executed ballots to his office, which was in his home. In *Olson, supra,* page 236, this court stated:

". . . However, it is obvious that by virtue of the rather strict provision in sec. 11.57, prohibiting the count of an absentee ballot which was not delivered to the clerk's office or mailed there, the legislature intended to indicate public opposition to the solicitation of voters by a clerk charged with the responsibility of receiving the delivery in person by mail of absentee ballots, or to afford an opportunity for such purpose. . . ."

We are fully cognizant of possible abuses of the absentee voter's law and share the concern of the legislature in preventing any such abuse. If the record in this case indicated the slightest evidence of any fraud, connivance or attempted undue influence, we would have no hesitancy in declaring the absentee voters' ballots invalid. However, we are not inclined to disenfranchise these voters who acted in conformance with the statutory requirements. There is absolutely no evidence from which it could be inferred that the method of delivery by the municipal clerk in any way affected their vote.

In *Sommerfeld v. Board of Canvassers, supra,* pages 303, 304, it was stated:

". . . We have held that the word 'shall' can be construed to mean 'may.' *George Williams College v. Williams Bay,* 242 Wis. 311, 7 N. W. (2d) 891. In passing upon statutes regulating absentee voting, the court should look to the whole and every part of the election laws, the

intent of the entire plan, the reasons and spirit for their adoption, and try to give effect to every portion thereof."

Considering all the facts of this case, we are of the opinion that the mandate of sec. 5.01, Stats., requires the conclusion that these absentee voters' ballots be counted.

## Certificate of elector.

The appellant challenges the manner in which the certificates on 17 absentee voters' envelopes were executed. These 17 absentee ballots were cast in seven scattered voting precincts in the city of Wauwatosa. Nine of these were cast in the 3d precinct of the 8th ward, and six of these nine absentee ballots were apparently cast by residents of Luther Manor. Sixteen of these 17 absentee ballots were opened, combined with the other absentee ballots in the particular precincts and counted. There is no way to identify any absentee ballot with any particular absentee voter's envelope and no way to ascertain whether or not these voters voted for supervisor.

Formerly, the requirement was that these ballots had to be sworn to before a notary public or a person authorized to administer oaths. Now the certificate or affidavit can be made and subscribed either before two witnesses or an officer authorized to administer oaths.

Sec. 6.87 (4), Stats., provides as follows:

"(4) The elector voting absentee shall either make and subscribe to the affidavit before a person authorized to administer oaths or make and subscribe to the certification before 2 witnesses. The absent elector, in the presence of the administrator of the oath or witnesses, shall mark the ballot in a manner that will not disclose how the ballot is marked. The elector shall then, still in the presence of the administrator of the oath or the 2 witnesses, fold the ballots so each is separate and conceals the markings thereon and deposit them in the proper

envelope, but may receive assistance under sub. (5). The return envelope shall then be sealed. The witnesses or the official oath administrator shall not be a candidate. The envelope shall be mailed by the elector, postage prepaid, or delivered in person, to the municipal clerk issuing the ballot. Failure to return the unused ballot in a primary shall not invalidate the marked ballot."

The absentee ballots that are the subject of this controversy were signed by two witnesses. Each challenged absentee ballot envelope has on the back a form which in part reads, "I, ———— (certify) (do solemnly swear) . . . ." with another space for the absentee voter's signature at the bottom and on the right-hand side of this certification paragraph and immediately above the statement to be executed by a notary public or officer authorized to administer oaths. The voters who completed these challenged certifications did not sign their names at the bottom of this paragraph where the space is provided for their signature but, instead, put their names in the space at the beginning of the paragraph. Below, and to the right of the voter's certification paragraph, is the affidavit form which can be completed by a notary public or officer authorized to administer oaths, in lieu of having two witnesses certify the absentee voter's signature. The officer's affidavit form was not used by these voters. However, we are of the opinion that one reason for the confusion on the part of these voters regarding the proper placement of their signature, stems from the fact that the voter certification paragraph and the officer's affidavit form are so located on the envelope that one could reasonably have concluded that the signature space between the two was part of the officer's affidavit and not for the certification of the voter's signature before two witnesses. Our conclusion is buttressed by the fact that those envelopes, which were subscribed to before an officer who completed the affidavit, have voter certifications signed in the proper

place. To further add to the confusion, the instructions on the end of the envelope state, "Only one certificate need be signed—NOT BOTH."

In each instance the voter signed his name, although not in the specific place designated, and the signature was witnessed by two witnesses. We also observe that there is no pattern of similarity among the names of the various people who signed as two witnesses to each certification.

Three of the 17 absentee ballot envelopes were executed by the respective voters by printing their names into the appropriate space. However, Lanser does not allege that the form of these signatures are improper; that is to say, that the voters were required to write their names instead of printing them. Also, there is no allegation or proof that these names were not in fact filled in by the respective voters themselves.

Sec. 6.88 (3) (b), Stats., provides in part as follows:

*"When the affidavit or certification is found to be insufficient,* the applicant is not a qualified elector in the ward, the ballot envelope is open or has been opened and resealed, the ballot envelope contains more than one ballot of any one kind, or if due proof appears to the inspector that an absentee elector has since died, *the vote shall not be accepted or counted. . . ."* (Emphasis supplied.)

The trial court found that these absentee voters had substantially complied with the law and, therefore, their votes were properly counted. We agree.

Sec. 6.87 (4), Stats., is derived from sec. 11.59. (*See* Legislative Council Note, 1965, 1970 Wis. Annotations, p. 191.) In *Schmidt v. West Bend Board of Canvassers* (1962), 18 Wis. 2d 316, 323, 118 N. W. 2d 154, the court held:

"The provisions of secs. 11.58 and 11.59, Stats., are deemed to be directory and not mandatory. *Petition of Anderson* (1961), 12 Wis. (2d) 530, 534, 107 N. W. (2d)

496. See *Sommerfeld v. Board of Canvassers* (1955), 269 Wis. 299, 69 N. W. (2d) 235. . . ."

"Subscribe" is generally defined as ". . . to sign with one's own hand . . . to attest by appending one's name . . . ." Webster's, *Third New International Dictionary*, p. 2278.

Sec. 990.01 (38), Stats., defines signature as follows:

"(38) SIGNATURE. If the signature of any person is required by law it shall always be the handwriting of such person or if he is unable to write, his mark or his name written by some person at his request and in his presence."

Whether these three electors have written or printed their names to the certifications on their respective absentee ballot envelopes they have substantially complied with the requirements of sec. 6.87 (4), Stats. If they have not technically complied with that provision because it requires their signatures at the end of the certification, they have substantially complied with the law and their votes were properly counted.

The seventeenth of these absentee voter's ballots, which is the one that has never been opened, was executed in the same manner as the 16 just previously considered. The signature of Mrs. C. E. Culbertson (Otillio) also appeared at the beginning of the certificate. Two witnesses signed the certification. On the front of the envelope this voter's name and return address are listed as follows:

"Mrs. C. E. Culbertson
10818 W. Fiebrantz
Milwaukee, Wis. 53222."

It would appear that this is the only absentee voter's envelope executed in this manner in the 2d precinct of the 8th ward of Wauwatosa.

We are of the opinion that the trial court properly ruled that if the election commission determined that

Mrs. Culbertson was a properly registered voter that the ballot envelope certification substantially complied with the absentee voter statutory requirements and the ballot envelope should be opened and the ballots therein counted as cast by the elector.

We conclude by quoting, with approval, a paragraph from the decision of the trial judge:

"The court should comment in this decision that the confusion and uncertainties caused as a result of this election could easily have been remedied by a proper instruction to the poll workers and inspectors and an insistence upon a compliance with the legal requirements concerning absentee voter ballots. It would appear that if there is any doubt or question concerning absentee voter ballots, that the election workers should set the particular absentee voter ballot envelope aside until such time as a proper determination can be made regarding compliance with the law. The acts and omissions of the election officials in this case have placed numerous electors in jeopardy of being disfranchised through no fault of their own. The city clerk of the city of Wauwatosa should seek legal advice from his city attorney regarding his responsibilities and duties concerning the handling of absentee voter ballots."

A third issue raised by appellant concerns one absentee ballot in the 22d precinct of the 5th ward, city of Milwaukee. Since we have determined that the other absentee ballots which were challenged were, in fact, valid, it becomes unnecessary to reach this issue.

". . . This court is entitled to find moot and dismiss appeals where its ruling is no longer needed or makes no difference as to the resolution of a controversy." *Appel v. Halverson* (1971), 50 Wis. 2d 230, 233, 184 N. W. 2d 99. *See also: Look v. Zignego Contractors, Inc.* (1970), 47 Wis. 2d 197, 177 N. W. 2d 127.

A successful challenge to the one vote in the 22d precinct of the 5th ward would not change the results of the election, therefore, the issue is moot.

*By the Court.*—Judgment affirmed.