IN the MATTER OF an APPEAL FROM RECOUNT IN the ELECTION CONTEST OF Charles HAYDEN & George JOHNSON:

George JOHNSON, Appellant,

v.

Charles HAYDEN, Respondent.†

Court of Appeals

*No. 81–188. Submitted on briefs September 17, 1981.—Decided November 24, 1981.*
(Also reported in 313 N.W.2d 869.)

---

† Petition to review denied. DAY, J., took no part.

470

For the appellant the cause was submitted on the brief of *Charles V. Feltes* and *Kostner, Ward, Galstad & Koslo,* of Osseo.

For the respondent the cause was submitted on the brief of *Thomas E. Lister* and *Sherman, Stutz & Lister,* of Black River Falls.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. George Johnson appeals from an order directing the Jackson County Clerk to certify Charles

Hayden as the duly elected sheriff of Jackson County. Johnson claims that the board of canvassers erred in failing to count five ballots and in counting 25 others. We agree with Johnson's first contention but disagree with the second. Our conclusion mandates reversal of the trial court's order.

Johnson and Hayden ran for the Jackson County sheriff's position in the November 4, 1980 election. Johnson was declared the winner by 31 votes. As a result of a recount, Hayden was determined to have won by five votes. The county board of canvassers subsequently ruled that the recount was invalid, and the county clerk certified Johnson as the winner of the election.

Hayden appealed to the circuit court pursuant to sec. 9.01(6), Stats. Because various errors occurred during the recount, and pursuant to the parties' stipulation, the court ordered a second recount. The board of canvassers concluded after that recount that Hayden had won by four votes. The trial court affirmed the board of canvassers' conclusion, but reduced Hayden's margin to three votes for reasons not challenged on appeal. It then ordered Hayden certified as the winner of the election.

The issues are whether 25 absentee ballots cast in the City of Black River Falls should have been voided and whether five absentee ballots from the Town of Manchester were properly voided by the board of canvassers. Because a reversal of the trial court on either issue could change the outcome of the election, we must address both issues.

## BLACK RIVER FALLS VOTES

*Jurisdiction*

Social workers employed by two nursing homes obtained absentee ballot applications from the city clerk in Black River Falls. After the nursing home residents

completed the applications, the social workers returned them to the city clerk. The city clerk then issued absentee ballots which the social workers delivered to the nursing home residents. After the residents voted, the social workers returned the completed ballots to the city clerk's office.

The board of canvassers determined that 25 absentee ballots had been cast in Black River Falls by the nursing home residents. Johnson challenged the 25 ballots because of failure to comply with statutory procedures for absentee voting. The specific procedural objections are discussed later in this opinion. The board counted the ballots but referred the question of their validity to the court. The court determined that it lacked jurisdiction to decide the issue, holding that *quo warranto* was the proper remedy for Johnson to pursue.

This action was commenced pursuant to sec. 9.01, Stats., which provides in pertinent part:

(1) (a) Any candidate voted for at any election . . . may request a recount. The petitioner shall file a verified petition . . . . Each verified petition shall state that at the election the petitioner was a candidate for the office in question . . .; that the petitioner is informed and believes that a mistake or fraud has been committed in a specified ward or municipality in the counting and return of the votes cast for the office . . .; or shall specify any other defect, irregularity or illegality in the conduct of the election. . . .

. . . .

(4) . . . The proper board of canvassers shall reconvene at 9 a.m. on the day following the filing of the petition and proceed to recount the ballots in all wards specified and otherwise check the fact allegations of the petition. Any errors shall be corrected.

(5) Any member of the board of canvassers may administer oaths, certify official acts and issue subpoenas for purposes of this section. Witness fees shall be paid by the county.

(6) Within 5 days after completion of the recount determination by the board of canvassers in all counties concerned, any candidate . . . aggrieved by the recount may appeal to circuit court. . . .

. . . .

(8) Nothing in this section shall be construed to abrogate any right or remedy that any candidate may now have affecting the trying of title to office.

Hayden argues that Johnson's challenge is to the absent voters and therefore beyond the bounds of the board of canvassers' jurisdiction.[1] We disagree with this characterization. Johnson's challenge goes to compliance with the procedures for absentee voting, not to the eligibility of the nursing home residents to vote.[2] Hayden's reliance on *Henning v. Waterford,* 78 Wis. 2d 181, 253 N.W.2d 893 (1977), for the proposition that *quo warranto* is the exclusive manner in which title to office can be established, is misplaced. *Henning* concerned an appointment to office. It did not address the remedy for failure to follow election procedures.

Johnson has not challenged the legality of the election as a whole. He challenges 25 absentee ballots cast in one ward of one city in a county-wide election. His complaint

---

[1] Johnson contends that Hayden failed to raise this objection in a timely manner before the circuit court and the objection was therefore waived. We need not decide whether the jurisdictional objection was timely made. The objection goes to the subject matter jurisdiction of the court. Objections to the court's subject matter jurisdiction cannot be waived. *State ex rel. Skinkis v. Treffert,* 90 Wis. 2d 528, 531, 280 N.W.2d 316, 317 (Ct. App. 1979).

[2] We note that in any event, "[t]he question of the eligibility of a voter and the disqualification of the vote of an ineligible voter [are] matters affecting the result of the election which the board of canvassers could have corrected upon proper petition" pursuant to sec. 9.01, Stats. *Clapp v. Joint School Dist.,* 21 Wis. 2d 473, 477, 124 N.W.2d 678, 681 (1963).

concerns the procedure by which 25 nursing home residents exercised their absentee voting privileges. The board is vested with statutory power to investigate defects which can be remedied by the disqualification of ballots. *Clapp v. Joint School Dist.*, 21 Wis. 2d 473, 477, 124 N.W.2d 678, 681 (1963). Had the board found merit in Johnson's complaint, it could have disqualified the ballots and conducted a drawdown as provided by statute. Sec 9.01(1)(b)4, Stats. We therefore conclude the board, and thus the court, had jurisdiction to decide Johnson's challenge.

*Absentee Voting Procedures*

A social worker testified that nursing home residents voted in her office, with the exception of a quadriplegic who voted in his room. That resident was unable to mark the ballot, so, after indicating his preference, he asked the social worker to mark the ballot for him. She helped a few of the residents fold their ballots and seal their envelopes. She then took the sealed envelopes back to the clerk's office.

A second social worker testified that she took ballots to the residents' rooms and had the residents vote in a secluded spot. She assisted some of the residents in reading the names and referendum on the ballot, and in folding the ballots and sealing the envelopes. She did not assist any of them in marking the ballots. The completed ballots were then returned to the clerk's office.

Johnson complains that the application for and delivery of the ballots does not conform to statutory requirements, and that the marking, folding and return of the ballots was tainted by fraud or showed a potential for fraud.

■■■

A. *Application For And Delivery Of Ballots*

Johnson first argues that the nursing home residents failed to comply with sec. 6.86, Stats.,[3] which provides that absent electors may apply for ballots in writing, in person, by completing an affidavit, or by an agent. He contends that the social workers were agents and that they failed to present the form required by sec. 6.86 (3) (a). That section applies to hospitalized electors who wish to "apply for and obtain" a ballot by an agent.[4]

Section 6.86(3) (a), Stats., is not the sole method by which a hospitalized elector may obtain an absentee ballot. Section 6.86(1) provides that any elector qualifying as an absentee elector "may apply to the municipal clerk for an official ballot either in writing, in person, . . . ." Here, the nursing home residents applied for

[3] Section 6.86, Stats., provides in relevant part:

(1) An elector, qualifying . . . as an absent elector may apply to the municipal clerk for an official ballot either in writing, in person, by completing an affidavit as provided in sub. (2) or by agent as provided in sub. (3). If application is made in writing, the application, signed by the elector, shall be received no sooner than the first of the month 3 months before the election nor after 5 p.m. on the Friday immediately preceding the election. . . .

(2) An elector who is indefinitely confined because of age, physical illness or infirmity or is disabled for an indefinite period may by signing an affidavit to that effect require that an absentee ballot be sent to the elector automatically for every election. . . .

(3) (a) Any elector who . . . qualifies . . . as an absent elector because the elector is hospitalized, may apply for and obtain an official ballot by agent. Such agent may apply for and obtain a ballot for such hospitalized absent elector by presenting a form prescribed by the board and containing the required information supplied by such hospitalized elector and signed by such elector and any other elector from such hospitalized elector's municipality corroborating the information contained therein. . . .

[4] We do not decide whether nursing home residents are "hospitalized" within the meaning of sec. 6.86(3) (a), Stats., because the residents properly obtained ballots pursuant to sec. 6.86(1).

absentee ballots in writing. Section 6.86(1) does not specify the manner by which the written application must reach the municipal clerk. The question therefore becomes whether the social workers could validly deliver the ballots to the residents.

Section 6.87(3), Stats., provides in part: "The municipal clerk shall mail the absentee ballot postage prepaid for return to the elector's residence unless otherwise directed, or shall deliver it to the elector personally at the clerk's office." The undisputed facts establish that the city clerk did not follow this procedure.

Section 6.87(4), Stats., provides that after the elector has marked the ballot and sealed it in the envelope, "The envelope shall be mailed by the elector, postage prepaid, or delivered in person, to the municipal clerk issuing the ballot." Again, the undisputed evidence establishes that the residents did not follow this procedure.

Johnson argues that failure to follow these procedures should result in invalidation of the ballots.

In *Sommerfeld v. Board of Canvassers*, 269 Wis. 299, 69 N.W.2d 235 (1955), a third party returned completed absentee ballots to the municipal clerk. The supreme court noted that "[t]he provision that the ballot shall be mailed or delivered in person to the clerk is to prevent tampering with the ballot." It concluded that other safeguards in the statutes were sufficient to prevent such election fraud, and that "in order to fulfill the spirit of our election laws" the requirement of personal or mail delivery of the completed ballot should be construed as directory. The court concluded that delivery by an agent did not invalidate the ballots. *Sommerfeld*, 269 Wis. at 304, 69 N.W.2d at 238.

In *Olson v. Lindberg*, 2 Wis. 2d 229, 85 N.W.2d 775 (1957), the municipal clerk personally delivered absentee ballots to applicants at their homes. The court distinguished *Sommerfeld* because the statute which at

that time governed the return of completed ballots to the clerk did not provide that the votes were not to be counted unless the proper procedure was followed. The court noted that the statute governing delivery of absentee ballots to voters provided: "Any such ballot not mailed or delivered personally as herein stated shall not be counted." The court concluded:

[I]t is obvious that by virtue of the rather strict provision in sec. 11.57, prohibiting the count of an absentee ballot which was not delivered to the clerk's office or mailed there, the legislature intended to indicate public opposition to the solicitation of voters by a clerk charged with the responsibility of receiving the delivery in person by mail of absentee ballots, or to afford an opportunity for such purpose. We are obliged to conclude that the provisions in sec. 11.57, to the effect that the ballots should not be counted, is mandatory, and that in the instant cause the 18 absentee ballots delivered by the town clerk to places other than his office, may not be counted. *Olson*, 2 Wis. 2d at 236, 85 N.W.2d at 780.

The election statutes were substantially amended and recodified by ch. 666, Laws of 1965, effective July 1, 1967. The procedures for delivering absentee ballots from the clerk to the voter and from the voter to the clerk became subsections of the same statute, sec. 6.87, Stats. Another subsection of the same statute provides in relevant part: "Any ballot not mailed or delivered as provided in this section shall not be counted." Sec. 6.87 (6).

The supreme court interpreted the current statute in *Lanser v. Koconis*, 62 Wis. 2d 86, 214 N.W.2d 425 (1974). In that case, a special courier working for the city delivered absentee ballots from the city clerk's office to nursing homes. The court distinguished *Olson*, limiting its application to the fact that the town clerk had personally delivered the absentee ballots to the electors'

homes, and emphasizing the policy of preventing solicitation of voters by the clerk. The court then stated:

> We are fully cognizant of possible abuses of the absentee voter's law and share the concern of the legislature in preventing any such abuse. If the record in this case indicated the slightest evidence of any fraud, connivance or attempted undue influence, we would have no hesitancy in declaring the absentee voters' ballots invalid. However, we are not inclined to disenfranchise these voters who acted in conformance with the statutory requirements. There is absolutely no evidence from which it could be inferred that the method of delivery by the municipal clerk in any way affected their vote.

*Lanser*, 62 Wis. 2d at 93, 214 N.W.2d at 428. The court noted the rule of statutory construction that "shall" can be construed to mean "may," *id.*, and apparently applied this rule to the mandate of sec. 6.87(6), Stats. The court finally determined that the policy of giving effect to votes expressed in sec. 5.01, Stats., required the counting of the ballots. *Lanser*, 62 Wis. 2d at 94, 214 N.W.2d at 429.

We conclude that, despite the directive that improperly delivered ballots shall not be counted, the statute governing the delivery of absentee ballots must be construed as directory. Only when the municipal clerk appears to have solicited voters, or when there is any evidence of fraud, will voters who acted in good faith be disenfranchised. Because social workers delivered the ballots, there is no indication that the Black River Falls city clerk solicited the 25 voters.

### B. *Marking, Folding And Return Of Ballots*

Johnson argues that there was fraud or the potential for fraud and that the ballots therefore should not be counted. Section 6.87(4), Stats., provides that the elec-

tor is to fold the ballot and deposit it in the envelope. Section 6.87 (5) provides:

> If a person requests assistance, an officer authorized to administer oaths shall assist an absentee elector who is unable to read, or who by reason of physical disability is unable to mark, punch or label his or her ballot, and shall then sign his or her name to a certification on the back of the ballot, substantially as provided under s. 5.55.

Neither social worker who assisted the nursing home residents is authorized to administer oaths.

Section 12.13, Stats., the election fraud statute, provides in material part:

> (3) *Prohibited acts.* No person may:
>
> . . . .
>
> (n) Receive a ballot from or give a ballot to a person other than the election official in charge.
>
> . . . .
>
> (p) Receive a completed ballot from a voter unless qualified to do so.

The evidence establishes a failure to comply with these requirements of the law. There is no evidence, however, that the social workers tampered with the ballots or influenced a resident's vote. They did nothing that an officer authorized to administer oaths could not have done to assist the voters. The only inference permitted by the evidence is that the social workers were trying to be helpful. Thus, although they engaged in prohibited acts, we find not even the slightest evidence of actual fraud sufficient to result in the disenfranchisement of 25 voters. Absent connivance, fraud or undue influence, substantial compliance with the statutory voting procedures is sufficient. *Lanser,* 62 Wis. 2d at 90, 214 N.W. 2d at 427.

Johnson contends there was no substantial compliance with the election statutes. The only lack of compliance

evident from the record is the failure to deliver the ballots personally or by mail, and that persons not authorized to administer oaths assisted the voters. There is no evidence of late or improper transmittal of the ballots to the polling place or from there to the municipal and county clerks, nor is there evidence of irregularities in the affidavits. No challenge has been made to the qualifications of the voters, and we have determined that their applications for absentee ballots were properly made. We therefore conclude that there was substantial compliance with the absentee voting statutes and that the 25 ballots were correctly counted.

## MANCHESTER VOTES.

Ruby Dill has been municipal clerk of the Town of Manchester for 35 years. She testified that she delivered seven unopened absentee ballot envelopes to the polling place on November 4, 1980. The election inspectors opened the envelopes, removed the ballots, and placed them in the ballot box. The envelopes were placed in a wastebasket.

The board of canvassers must examine absentee ballot envelopes. Sec. 9.01(1)(b)2, Stats. The Jackson County Clerk testified that she discovered prior to the first recount that she did not have the absentee ballot envelopes from about twenty wards. Municipal clerks were called and asked to deliver the envelopes to the county clerk. Ruby Dill indicated that she could not do so because the envelopes had been thrown away. The first recount therefore proceeded without those seven envelopes. Two days later, Ms. Dill went to the polling place and discovered the envelopes were still in the wastebasket. She then delivered them to the county clerk. She testified that she did not place the envelopes in a carrier envelope before doing so because she had

returned all of her carrier envelopes to the county clerk with the other election materials.

A member of the board of canvassers testified that the board rejected the seven absentee ballot envelopes at the second recount because they had been brought in late. The Manchester poll list consisting of 220 names, was therefore reduced to 213. *See* sec. 9.01(1)(b)2, Stats.[5] Since 218 ballots had been cast in Manchester, it was necessary to eliminate five ballots to make the number of ballots equal to the number of names on the poll list. Two ballots were removed because they had been improperly initialed. Three ballots were then drawn at random. *See* sec. 9.01(1)(b)4.[6] All five ballots had been marked for Johnson.

---

[5] Section 9.01(1)(b)2, Stats., provides in relevant part:

The board of canvassers shall then examine the absentee ballot envelopes. Any defective absentee ballot envelopes shall be laid aside, properly marked and carefully preserved. The number of voters shall be reduced by the number of ballot envelopes set aside under this subdivision.

[6] Section 9.01(1)(b)4, Stats., provides:

When the container or bag has been checked, it shall be opened and the contents removed. The board of canvassers shall, without examination other than is necessary to determine that each is a single ballot, count the number of ballots therein. If the number of ballots and the totals recorded under subd. 1 do not agree, the board of canvassers shall make a record of this fact. When the number of ballots exceeds the number of voters, the board of canvassers shall place all ballots face up to check for blank ballots. Any blank ballots shall be so marked, laid aside and carefully preserved. If the number of ballots still exceeds the number of voters, the board of canvassers shall place all ballots face down to check the initials. Any ballot not properly initialed by 2 ballot clerks or any absentee ballot not properly initialed by the municipal clerk shall be so marked, laid aside and carefully preserved. If the number of ballots still exceeds the number of voters, the remaining ballots shall be returned to the container or bag and the board of canvassers shall draw a number of ballots equal to the excess number of ballots by chance and without inspection from the container or bag. These ballots shall be

Section 6.87(2), Stats., requires the municipal clerk to place each absentee ballot in an unsealed envelope printed with an affidavit to be executed by the absentee voter. The absentee voter places the marked ballot in the envelope, completes the affidavit, seals the envelope, and returns it to the clerk. Sec. 6.87(4). The clerk then encloses the unopened absentee ballot envelope in a carrier envelope and delivers it to the appropriate election inspectors on election day. Sec. 6.88(1) and (2). After all votes are tallied, the election inspectors deliver the ballots and envelopes in a sealed carrier envelope to the municipal clerk, who delivers them to the county clerk by 2:00 p.m. on the day following the election. Secs. 7.51 (3)(d) and (5), Stats.

Johnson complains that Ruby Dill's failure to make timely delivery of the ballots to the county clerk and her failure to deliver them in a sealed carrier envelope should not result in rejection of the envelopes. His argument is based in part on sec. 5.01(1), Stats., which provides: "Chapters 5 to 12 shall give effect to the will of the electors, if that can be ascertained from the proceedings, notwithstanding informality or failure to fully comply with some of its provisions." The supreme court has repeatedly recognized and given effect to this policy, holding that voters should not be disenfranchised through no fault of their own because of technical mistakes committed by election officials. *See, e.g., McNally v. Tollander,* 100 Wis. 2d 490, 502, 302 N.W.2d 440, 446 (1981) and cases cited therein; *Sommerfeld,* 269 Wis. at 302, 69 N.W.2d at 237 ("The number of absentee ballots is increasing rather than decreasing. Where possible, our

specially marked as having been removed by the canvassers on recount due to an excess number of ballots and carefully preserved.

statute should be interpreted to enable these people to vote.").

When the legislature has "provided in explicit language that absentee ballots shall not be counted unless certain provisions of the statute are complied with, compliance with those provisions is mandatory." *Petition of Anderson,* 12 Wis. 2d 530, 534, 107 N.W.2d 496, 498 (1961). When, however, the legislature has not done so "expressly and in clear language," the statutes should be construed as directory. Strict compliance with a directory statute is not required. *Id.* A statute which "merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election" should be construed as directory. *Lanser,* 62 Wis. 2d at 91, 214 N.W.2d at 427, quoting *Gradinjan v. Boho,* 29 Wis. 2d 674, 681, 139 N.W.2d 557, 561 (1966).

Section 6.88(3)(b), Stats., states that an absentee vote shall not be counted if:

[t]he affidavit or certification is found to be insufficient, the applicant is not a qualified elector in the ward, the ballot envelope is open or has been opened and resealed, the ballot envelope contains more than one ballot of any one kind, or if due proof appears to the inspector that an absentee elector has since died . . . .

None of those conditions are present in this case. The statutes regulating the manner and time of delivery of absentee envelopes to the county clerk do not provide that lack of compliance invalidates the ballots or the election. We therefore conclude that the statutes violated by Ruby Dill are directory, and that substantial compliance with their terms is all that is required. *McNally,* 100 Wis. 2d at 497, 302 N.W.2d at 444.

Hayden argues that there was a total absence of compliance with the statutes. The court made no findings in that regard. All relevant facts are undisputed and no conflicting inferences can reasonably be drawn from them. Resolution of the issue is therefore a question of law and the court's failure to make findings does not hamper our review. *Vande Zande v. ILHR Dept.*, 70 Wis. 2d 1086, 1094, 236 N.W.2d 255, 259 (1975).

There is no evidence that Ruby Dill failed to properly deliver the blank ballots to the voters, or that they were improperly returned to her. She delivered the ballots to the election inspectors on the appointed day. She testified that she examined the affidavits and found that they were complete. She did not open the absentee ballot envelopes prior to delivering them to the election inspectors. There is no evidence to suggest that Ms. Dill did not make timely delivery of the ballots and other election materials (with the exception of the envelopes) to the county clerk following the election. The integrity of the ballots themselves has not been impeached. We conclude that Ruby Dill substantially complied with the law.

Hayden argues that the substantial compliance rule should not apply when there is "the slightest evidence of any fraud . . . ." *Lanser*, 62 Wis. 2d 93, 214 N.W.2d at 428. The record reveals no evidence of fraud. There is no evidence that the absentee ballots had been tampered with. The parties stipulated that the town hall—which had been the polling place—had been locked from the time of the election until the time Ruby Dill found the envelopes in the wastebasket, that the wastebasket had not been emptied in that time, that there were no break-ins, and that the town board met once during that period of time but none of its members took anything from the wastebasket.

Ruby Dill testified that one of the absentee voters signed the affidavit in her presence and that she notarized the signature. When she took the envelope from the wastebasket, however, she discovered she had failed to date her notarization. She added the date at that time. Her addition of a date could not have influenced the vote and there is no evidence that she acted fraudulently in doing so. We conclude that there is not the slightest evidence of any fraud and that the law was substantially complied with. The five people who cast their votes for Johnson should not have been disenfranchised. We conclude that those five votes must be counted.

The circuit court determined that Hayden won the election by three votes. Counting the five Johnson votes that were improperly drawn from the Manchester votes results in a victory for Johnson by two votes. We therefore reverse the circuit court's order and direct the court to order the Jackson County Clerk to certify Johnson as sheriff.

*By the Court.*—Reversed and remanded with directions.